1  Jeffrey R. Krinsk, Esq.  (CA Bar No. 109234)
   jrk@classactionlaw.com
2  Trenton R. Kashima, Esq. (CA Bar No. 291405)
   trk@classactionlaw.com
3  FINKELSTEIN & KRINSK LLP
   550 C Street, Suite 1760
4  San Diego, California 92101
   Telephone: (619) 238-1333
5  Facsimile: (619) 238-5425

6  *Attorneys for Plaintiffs*
   *and the proposed Settlement Class*

7

8               UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11 BAERBEL MCKINNEY-DROBNIS,        Case No: 3:16-cv-6450 MMC
   JOSEPH B. PICCOLA, and  CAMILLE
12 BERLESE, individually and on behalf of all   **PLAINTIFFS' NOTICE OF MOTION**
   others similarly situated               **AND MOTION FOR PRELIMINARY**
13                                           **APPROVAL OF CLASS ACTION**
                                            **SETTLEMENT AND CERTIFICATION**
14        Plaintiffs,                       **OF SETTLEMENT CLASS;**
                                            **MEMORANDUM OF POINTS &**
15        v.                                **AUTHORITIES**

16 MASSAGE ENVY FRANCHISING, LLC, a   Date:     May 31, 2019
   Delaware Limited Liability Company,   Time:     9:00 a.m.
17                                        Courtroom: 7 – 19th Floor
                                          Judge:    Hon. Maxine M. Chesney
18        Defendant.

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. iii

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ..................................................................................... vi

STATEMENT OF THE ISSUES TO BE DECIDED ........................................................... 1

I.    INTRODUCTION .................................................................................................... 2

II.   FACTUAL AND PROCEDURAL HISTORY ........................................................ 4

    A.   The Factual Allegations and Causes of Action ..................................................... 4

    B.   The Parties' Early Dispositive Motions ............................................................... 6

    C.   The Parties' Discovery Efforts ............................................................................. 6

    D.   Settlement Negotiations ....................................................................................... 7

III.  SUMMARY OF THE PROPOSED SETTLEMENT .............................................. 8

    A.   Proposed Class ..................................................................................................... 8

    B.   Voucher Settlement Benefit ................................................................................. 9

    C.   Anticipated Reaction based on Similar Settlement ............................................ 10

    D.   Prospective Settlement Benefit .......................................................................... 10

    E.   The Release of Claims by the Class ................................................................... 11

    F.   Proposed Notice and Class Members' Right to Opt Out or Object ................... 11

    G.   The Vacatur of the MJOP Order ........................................................................ 12

    H.   Plaintiffs' Incentive Awards and Class Counsel's Attorneys' Fees and Costs ................. 13

IV.   THE CLASS MEMBERS MEET ALL REQUIREMENTS FOR CLASS CERTIFICATION 13

    A.   Rule 23(a) is Satisfied ....................................................................................... 14

        1.   The Class is too Numerous to Permit Joinder ............................................... 14

        2.   This Action Presents Common Questions of Law or Fact ............................. 14

        3.   Plaintiffs' Claims are Typical of Those of the Class ..................................... 14

        4.   Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class Members ......................................................................................................... 15

i

B. Rule 23(b)'s prongs are satisfied..................................................................................... 16

    1. Common Questions of Law or Fact Predominate. .......................................... 16

    2. A Class Action is the Superior Method of Adjudication ................................ 16

V. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ................. 17

A. The Proposed Settlement Provides Excellent Relief to Class Members............................ 18

B. The Settlement is the Product of Well-Informed, Vigorous, and Thorough Arm's-Length Negotiations ........................................................................................................................ 22

C. The Recommendation of Experienced Counsel Favors Approval. ..................................... 22

D. Plaintiffs will Request Reasonable Attorney's Fees and Costs and Incentive Awards ..... 23

VI. THE PROPOSED NOTICE PLAN COMPORTS WITH DUE PROCESS .......................... 24

VII. CONCLUSION ...................................................................................................................... 25

1
2

# TABLE OF AUTHORITIES

**Federal Cases**

3

*Amchem Prods. v. Windsor*,
　521 U.S. 591 (1997) ..................................................................................... 16

4

*Armstrong v. Davis*,
　275 F.3d 849 (9th Cir. 2001) ......................................................................... 15

5
6

*Burden v. SelectQuote Ins. Servs.*,
　No. C 10-05966 SBA, 2013 WL 1190634 (N.D. Cal. Mar. 21, 2013) ...................................... 24

7

*Carnegie v. Household Int'l, Inc.*,
　376 F.3d 656 (7th Cir. 2004) ......................................................................... 17

8
9

*Chu v. Wells Fargo Invs., LLC*,
　Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) .......... 23

10
11

*Churchill Village, L.L.C. v. Gen. Elec.*,
　361 F.3d 566 (9th Cir. 2004) ................................................................... 17, 24

12

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
　No. 6:12–1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015) ...................................... 20

13
14

*Class Plaintiffs v. City of Seattle* ("*City of Seattle*"),
　955 F.2d 1268 (9th Cir. 1992) ................................................................ 17, 22

15

*Donna Zizian v. Massage Envy Franchising, LLC*,
　Civ. No. 16-CV-00783-DMS-BGS (S.D. Cal.) ("*Zizian* Action") ............................... 6

16
17

*Hahn v. Massage Envy Franchising, LLC*,
　No. 3:12-cv-00153-DMS-BGS (S.D. Cal.) ("*Hahn* Action") .................................... 6

18

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ........................................................... 13, 14, 18

19
20

*In re Bluetooth Headset Prods. Liability Litig.*,
　654 F.3d 935 (9th Cir. 2011) ................................................................. 22, 23

21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
　No. 14-CV-2058 JST, 2017 WL 2481782 (N.D. Cal. June 8, 2017) ............................... 12

22
23

*In re Easysaver Rewards Litig.*,
　906 F.3d 747 (9th Cir. 2018) ......................................................................... 20

24

*In re Heritage Bond Litig.*,
　No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................... 22

25
26

*In re Juniper Networks Sec. Litig.*,
　264 F.R.D. 584 (N.D. Cal. 2009) ..................................................................... 15

27

*In re Linkedin User Privacy Litig.*,
　309 F.R.D. 573 (N.D. Cal. 2015) ..................................................................... 20

28

iii

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000).............................................................................. 18, 23

*In re Mexico Money Transfer Litig.*,
267 F.3d 743 (7th Cir. 2001)..................................................................................... 19

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)..................................................................................... 20

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)....................................................................................... 18

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) .............................................................................. 19

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
No. 08–MDL–1958, 2012 WL 5055810 (D. Minn. Oct. 18, 2012).......................... 24

*Jordan v. Los Angeles Cty.*,
669 F.2d 1311 (9th Cir. 1982)................................................................................... 15

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ...................................................................... 19

*Knight v. Red Door Salons, Inc.*,
No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................................. 22

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)................................................................................... 18

*McCrary v. Elations Co., LLC*,
No. EDCV 13-00242 JGB, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ................ 17

*McDonald v. Bass Pro Outdoor World, LLC*,
No. 13-cv-889-BAS, 2014 WL 3867522 (S.D. Cal. Aug. 5, 2014).......................... 18

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) .............................................................................. 17

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982)............................................................................... 14, 18

*Phillips Petrol. Co. v. Shutts*,
472 U.S 797 (1985)..................................................................................................... 25

*Pilkington v. Cardinal Health (In re Syncor ERISA Litig.)*,
516 F.3d 1095 (9th Cir. 2008)................................................................................... 17

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968)................................................................................................... 18

*Rangel v. PLS Check Cashers of California, Inc.*,
899 F.3d 1106 (9th Cir. 2018)............................................................................. 11, 21

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009).................................................ix................................. 17

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994) ................................................................................................. 24

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ........................................................................................... 15, 23

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036, 1045 (2016) .................................................................................................. 16

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ............................................................................................................. 14

**Statutes**

28 U.S.C. § 1292 ............................................................................................................................... 6

28 U.S.C. § 1715 ............................................................................................................................. 12

**Rules**

Fed. R. Civ. P. § 23 ............................................................................................................. passim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 31, 2019, at 9:00 a.m., in Courtroom 7 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Maxine M. Chesney presiding, Plaintiffs Baerbel McKinney-Drobnis, Joseph B. Piccola, and Camille Berlese in the matter titled *McKinney-Drobnis, et al., v. Massage Envy Franchising, LLC,* Case No. 3:16-cv-06450-MMC, will and hereby do move the Court, pursuant to Federal Rules of Civil Procedure 23(c)(2) and 23(e), for an Order:

1.     Preliminarily approving the Settlement reached between the Plaintiffs and Defendant Massage Envy Franchising LLC ("MEF") (collectively, the "Parties"), the terms of which are set forth in the Settlement Agreement attached as Exhibit D to the Declaration of Jeffrey R. Krinsk ("Krinsk Decl.") filed in support of this Motion;

2.     Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), and for purposes of, and solely in connection with, the Settlement, conditionally certifying a nationwide Class, as defined in the Settlement Agreement, appointing the foregoing named plaintiffs as representatives for the Class and appointing Jeffrey R. Krinsk and Trenton R. Kashima of Finkelstein & Krinsk LLP as Class Counsel;

3.     Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), approving the Parties' proposed Notice program, as set forth in the Settlement Agreement, including the Summary Notice and Long Form Notice attached as Exhibits 4 and 2 to the Settlement Agreement, respectively, and directing notice of the proposed Settlement to the Class;

4.     Appointing Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator to carry out the duties related to settlement administration, including, but not limited to, sending notice as set forth in the Settlement Agreement;

5.     Approving the procedures set forth in the Settlement Agreement for Class Members to submit claims, exclude themselves from the Class, and object to the Settlement;

6.     Affirmatively stating that the template membership agreement attached as Exhibit 5 to the Settlement Agreement expressly entitles an independently owned and operated Massage

Envy® franchise location who uses the template or a substantially similar template to increase a member's monthly membership fee following the initial membership term upon 45 days' advance written notice;

       7.     Setting a schedule for the final approval process and for Plaintiffs' motion for incentive awards and Class Counsel's motion for an award of attorneys' fees and costs; and

       8.     Staying all non-settlement related proceedings pending final approval of the proposed Settlement.

       A material term of the Settlement is the Court vacating in their entirety, within 14 days of preliminary approval, the Court's (1) Order Denying Defendant's Motion for Judgment on the Pleadings or, Alternatively to Strike Class Allegations; Granting in Part and Denying in Part Plaintiffs' Motion to Strike Affirmative Defenses entered on April 5, 2017 [Doc. 49] and (2) Order Denying Defendant's Motion for Certification of Order for Interlocutory Appeal and Motion to Stay; Vacating Hearing entered on May 17, 2017 [Doc. 68].  Accordingly, contemporaneously with the filing of this Motion, the Plaintiffs and MEF will file a joint request that the Court vacate both Orders.  *See* Joint Motion to Vacate.

       This Motion is supported by the accompanying Memorandum of Points and Authorities; the Settlement Agreement, including all exhibits thereto; the Declarations of Jeffrey R. Krinsk, Luanne Sacks, and Cameron Azari submitted herewith, and exhibits thereto; the Joint Motion to Vacate filed contemporaneously with this Motion; all papers and records on file in this action; the argument of counsel; and such other matters as the Court may consider.

Date: April 15, 2019                Respectfully submitted,

                           FINKELSTEIN & KRINSK LLP

                           By: /s/ Jeffrey R. Krinsk

                           Jeffrey R. Krinsk, Esq.
                           Trenton R. Kashima, Esq.

                           *Attorneys for Plaintiffs and*
                           *the proposed Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Local Rule 7-4(a)(3) of the Civil Local Rules, Plaintiffs sets forth the following Statement of the Issues to be Decided:

1.      Whether the Court should certify, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), a Class of All MEMBERS of an ME LOCATION since November 4, 2006, who paid a FEE INCREASE prior to the date of PRELIMINARY APPROVAL, appoint plaintiffs as representatives for the Class and appoint Jeffrey R. Krinsk and Trenton R. Kashima of Finkelstein & Krinsk LLP as Class Counsel for purposes of the Settlement?

2.      Whether the terms of the Settlement Agreement represent a fair and reasonable compromise of the putative Class's claims and warrants preliminary approval and notice to the Class?

3.      Whether the proposed Notice program, as set forth in the Settlement Agreement, represents the best practicable notice to apprise the Class Members of the pendency of the class action and to give each class member a chance to be heard, object to, or opt out of the proposed Settlement?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Pursuant to Federal Rules of Civil Procedure  23(c)(2) and 23(e), Plaintiffs and proposed Class Representatives Baerbel McKinney-Drobnis ("McKinney-Drobnis"), Joseph B. Piccola ("Piccola"), and Camille Berlese ("Berlese") (collectively, McKinney-Drobnis, Piccola, and Berlese are referred to as "Plaintiffs") move for an order granting preliminary approval of the Settlement between Plaintiffs and Defendant Massage Envy Franchising LLC ("MEF") (collectively, MEF and Plaintiffs are referred to as the "Parties"), the terms of which are set forth in the Settlement Agreement attached as Exhibit D to the Declaration of Jeffrey R. Krinsk ("Krinsk Decl.").[1]

Plaintiffs filed this Action to challenge increases in monthly membership fees that they and members of the putative Class they seek to represent paid to independently owned and operated Massage Envy® franchise locations ("ME Locations").  Plaintiffs allege that their membership agreements preclude any increase in their monthly membership fees and that their membership fees were improperly increased in increments varying from $0.99 to $15.01 per month during the Class Period in violation of their membership agreements and other applicable law.  MEF contends that it is not a party to any of the Plaintiffs' or the Class Members' membership agreements and that neither Plaintiffs nor any Class Member paid any portion of their membership fees to MEF.  MEF further denies that it engaged in any wrongful conduct.

The Settlement was reached after the Parties conducted focused discovery and after more than a year of extensive arm's-length negotiations, including two mediations before private mediator David Rotman, Esq.  The Parties' negotiations were informed by the Court's ruling on MEF's pleadings challenges, responses to multiple sets of written discovery requests, the production of more than 7,000 pages of documents, and Plaintiffs' depositions.  Krinsk Decl., ¶ 74. Plaintiffs' counsel also had extensive knowledge of MEF and the Massage Envy® franchise system from their representation of a settlement class in a prior nationwide class action against MEF

---

[1] Unless otherwise defined herein, capitalized terms in this Motion incorporate the definitions of those terms set forth in Section I of the Settlement Agreement.

entitled *Gail Hahn v. Massage Envy Franchising, LLC*, No. 3:12-cv-00153-DMS-BGS, previously pending in the United States District Court for the Southern District of California (the "*Hahn* Action"). *Id.*

The Settlement appropriately reflects the realities and risks of litigation and is well calibrated to the facts of the case. It provides compensation to Settlement Class Members that is fair, reasonable, and adequate under the circumstances. MEF has agreed to provide Vouchers with a total face value of at least $10 Million, on a claims-made basis, to Settlement Class Members in amounts corresponding to the amount of monthly membership fee increases each Member paid: (i) those who paid in the aggregate $75 or less shall receive a $10 Voucher; (ii) those who paid in the aggregate between $75.01 and $125 shall receive a $20 Voucher; (iii) those who paid in the aggregate between $125.01 and $175 shall receive a $30 Voucher; (iv) those who paid in the aggregate between $175.01 and $225 shall receive a $40 Voucher; and (v) those who paid $225.01 or more shall receive a $50 Voucher. If the Vouchers claimed by Settlement Class Members have an aggregate value less than $10 Million, MEF has agreed to increase the value of claimed Vouchers on a *pro rata* basis to ensure that the total face value of distributed Vouchers is $10 Million.

The Vouchers may be used to purchase goods and/or services from ME Locations and are fully transferrable and aggregable. MEF also has agreed to injunctive relief in the form of adopting as a system standard, for two years, an updated template membership agreement that requires ME Locations to provide at least 45 days' advance written notice before increasing a members' monthly membership fees. All Class Members who do not opt out of the Settlement shall be bound by this template Membership Agreement at least beginning on the date the Court preliminarily approves the Settlement.

The Settlement provides for direct notice to the Class *via* email or mail, which notice will be supplemented by notice on a Settlement Website to be established by the proposed Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq")[2], an experienced and reliable

---

[2] Three settlement administrators submitted proposals for administration of this Settlement, each of which quoted similar rates for anticipated administration services. The Parties agreed to retain Epiq due to its familiarity with MEF, membership data from MEF's Millennium Central

provider of settlement administration services.  The notice will explain in plain language the Settlement, the amount of attorneys' fees and expenses Class Counsel intends to seek, the amount of incentive awards each Plaintiff intends to seek, Class Members' rights, including the right to opt-out or to object to the Settlement and/or to Class Counsel's request for attorneys' fees and expenses and Plaintiffs' incentive award request, how to properly submit a Voucher Request, and that those Class Members who do not opt-out of the Settlement shall be bound by the new Membership Agreement and the Settlement if the Court enters an order finally approving it.  The Settlement therefore affords the best notice practicable under the circumstances and complies with due process.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     The Factual Allegations and Causes of Action

Plaintiffs' allegations are set forth in the First Amended Complaint ("FAC") [Doc. 60]. MEF conducts a business format franchise with a nationwide footprint from its corporate offices in Scottsdale, Arizona.  It has authorized more than 1,200 independently owned and operated businesses to open and operate a franchised clinic or spa (i.e., ME Location), providing massage or other personal services.  Each ME Location allows consumers the opportunity to become a "Massage Envy" member.  Membership is not required to receive services, but it is advertised as providing numerous financial and other benefits.

Members are entitled to receive a fifty-minute massage (or at some clinics, facials and other spa services) each month in exchange for a monthly payment. *Id.*, ¶¶ 1, 4, 18.  A member's accrued massages can be used at any time while membership is active and at any ME Location, nationwide. *Id.*, ¶ 16.[3]

Plaintiffs assert that beginning in 2013 MEF and/or its ME Locations increased the monthly

---

Office Database, and counsel for the Parties from the *Hahn* Action settlement.  Those settlements were administered ably by the Garden City Group, which was acquired by Epiq in 2018.  Krinsk Decl., ¶ 62; Declaration of Cameron R. Azari, Esq. Regarding Proposed Notice Program, concurrently filed herewith, ¶ 20.

[3] Plaintiff alleged that MEF is a party to these contracts.  FAC., at ¶ 36.  MEF argues that it does not enter membership agreements with any consumers; instead, members enter membership agreements with franchised ME Locations.  *See generally* Defendant's Amended Answer to Plaintiffs' First Amended Complaint ("Answer") [Doc. 69].

membership amount by at least 99 cents.  Krinsk Decl., at ¶ 48; FAC at ¶ 10.  Additionally, Plaintiffs

claim that, in 2016, MEF and/or its ME Locations again increased monthly membership prices by

varying amounts.  Krinsk Decl., at ¶ 48; FAC at ¶¶ 12, 14.  It is undisputed that Plaintiffs'

membership fees were increased, but the parties dispute whether the Membership Agreements

allowed the increases.

Plaintiffs assert that the following language in the Membership Agreements precludes any

increase in monthly membership payments:

> Your <u>Membership dues</u> of $39 (not including any additional applicable taxes) will
> be due on July 14th and then due on or after the same day of each month hereafter
> <u>until your membership expires or is terminated in accordance with the agreement</u>.

> [Berlese's Initials] (Initial) Your membership is auto-renewable. Following the
> initial term, your membership will automatically continue on a month-to-month
> basis at $39 per month <u>until your membership is cancelled</u>.

Krinsk Decl., at ¶ 48, Ex. A (Plaintiff Berlese's Membership Agreement) (emphasis added); *see

also* Krinsk Decl., Ex. B (Plaintiff Piccola's Membership Agreement) & Ex. C (Plaintiff

McKinney-Drobnis' Membership Agreement).  MEF, on the other hand, contends s that other

language in the Membership Agreements allowed the monthly membership payments to be

increased:

> *<u>You have the right to receive a notice of change in the event that we make any
> changes to the terms and conditions of your membership that will vary the amount
> to be periodically billed to your account specified above</u>*.  We will send you a notice
> of change at the mailing address at the top of this Agreement at least ten days prior
> to the effective date of such change.

*See* Joint Stipulation Re: Schedule for Briefing [Doc. 70], at ¶ 5; *see also* Krinsk Decl., Exs. A-C.

Even if the increases in monthly membership payments were not allowed under the Class Member's

Membership Agreements, to prevail Plaintiffs still must demonstrate that MEF either breached the

Class Members' Membership Agreements or tortiously interfered with those agreements.[4]  *See id.*,

at ¶¶ 35-48.  MEF denies all liability.  *See generally,* Answer.

---

[4] Plaintiffs further allege that Massage Envy's practices are prohibited by the California False
Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17501, the California Consumer Legal
Remedies Act ("CLRA"), Cal. Civ. Code §§ 1770, *et seq.*, and the California Unfair Competition
Law ("UCL"), Cal. Bus. & Prof. Code §§ 17000, *et seq.*  FAC, at ¶¶ 49-79.

### B.     The Parties' Early Dispositive Motions

On January 27, 2017, Plaintiffs filed a Motion to Strike Defendant's Affirmative Defenses including the defenses "*Res Judicata*," "Impermissible Claims Splitting," "Claims Released," and "Waiver." [Doc. 24].  Also on January 27, 2017, MEF filed a Motion for Judgment on the Pleadings or, in the Alternative, to Strike Class Allegations ("MJOP"), arguing that the doctrine of *res judicata* and/or Plaintiffs' release of claims as members of the settlement class in *Donna Zizian v. Massage Envy Franchising, LLC*, Civ. No. 16-CV-00783-DMS-BGS (S.D. Cal.) ("*Zizian* Action") barred Plaintiffs' action.[5]  [Doc. 26]

On April 5, 2017, the Court granted Plaintiffs' Motion to Strike as to twenty-five of MEF's twenty-nine Affirmative Defenses.  *See* Order Denying Defendant's Motion for Judgment on the Pleadings or, Alternatively, to Strike Class Allegations; Granting in Part and Denying in Part Plaintiffs' Motion to Strike Affirmative Defenses ("April 5 Order") [Doc. 49], at pp. 11-18.  Additionally, the Court denied MEF's MJOP, finding that neither the *Zizian* settlement release nor the doctrine of *res judicata* barred Plaintiffs' claims.  *Id.* at pp. 4-9.

On April 20, 2017, MEF sought to certify the MJOP Order as an interlocutory appeal under 28 U.S.C. § 1292(B).  [Doc. 52]  This request was denied on May 17, 2017.  *See* Order Denying Defendant's Motion for Certification of Order for Interlocutory Appeal and Motion to Stay [Doc. 68] ("Certification Order").  The April 5 Order and the Certification Order are collectively referred to herein as the "MJOP Order" and are discussed at greater length in the Joint Motion to Vacate filed herewith.

### C.     The Parties' Discovery Efforts

The parties have engaged in substantial discovery.  Specifically, Plaintiffs propounded 55 document requests, 25 interrogatories, and two document subpoenas.  Krinsk Decl., at ¶ 41.  As a result, Plaintiffs have received and reviewed over 7,000 pages of documents.  *Id.*, ¶ 46.  These documents offered Plaintiffs' counsel significant insight into the factual basis supporting Plaintiffs' claims and, consequently, the value of the case.  Plaintiffs' Counsel also benefitted from discovery

---

[5] MEF also argued that claims of putative class members were barred by the settlement of the related action *Hahn v. Massage Envy Franchising, LLC*, No. 3:12-cv-00153-DMS-BGS (S.D. Cal.) ("*Hahn* Action").  The *Hahn* Action was filed and litigated by the undersigned counsel.

1   in the *Hahn* action regarding MEF's business practices.  *Id.*, ¶¶ 41, 73.

2       MEF also issued multiple document requests, interrogatories, and requests for admissions

3   to Plaintiffs, all of which had been answered.  *Id.*, ¶ 44.  MEF deposed each of the Plaintiffs.  *Id.*

4   MEF subpoenaed several of Plaintiffs' family members and friends as well, but Plaintiffs

5   successfully quashed most of these subpoenas.  *Id.*, ¶ 45; Order Regarding Joint Discovery Letter,

6   Dkt. No. 87; Order Denying Defendant's Motion for Relief from Nondispositive Pretrial Order of

7   Magistrate Judge [Doc. 98].

8       Plaintiffs' discovery efforts continued until the date the parties reached this Settlement.

9   Immediately prior to the Settlement, Plaintiffs and Defendant were negotiating the protocol for

10  Electronically Stored Information ("ESI") discovery, including discovery related to MEF's email

11  systems and Millennium Database.  Krinsk Decl., ¶¶ 42, 46.  Additionally, Plaintiffs scheduled and

12  were preparing to conduct depositions of certain of MEF's key corporate officers.  *Id.*, ¶ 43.

13      **D.    Settlement Negotiations**

14      Throughout this litigation, the parties had periodically explored the settlement of Plaintiffs'

15  claims.  Settlement discussions, however, did not begin in earnest until late 2017.  On October 10,

16  2017, the parties agreed to stay discovery, so that the parties could focus on Settlement discussions.

17  Krinsk Decl., ¶ 47.  On October 27, 2017, the parties' counsel met in Phoenix, Arizona, to exchange

18  their respective settlement positions.  *Id.*  The parties eventually agreed to a mediation before Mr.

19  Rotman on February 8, 2018.  *Id.*; Stipulation to Stay Action [Doc. 88].  The parties made

20  significant progress at that mediation but were unable reach an agreement.  Krinsk Decl., ¶ 50.

21  Nevertheless, the parties thereafter continued their settlement discussions.  *Id.*, ¶ 51.

22      Over the course of the next few months, counsel engaged in direct negotiations, slowly

23  narrowing the points of disagreement on material terms.  *Id.*  The parties also exchanged additional

24  informal discovery.  *Id.*.  On June 14, 2108, believing that they made significant progress, the

25  parties agreed to extend the discovery stay to allow settlement discussions to continue.  *Id.*;

26  Stipulation to Extend Stay [Doc. 93].

27      The parties scheduled another mediation for August 8, 2018 with Mr. Rotman, but

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No: 3:16-cv-6450 MMC

disagreement about the preconditions for the mediation led to that mediation being cancelled and the parties jointly requesting that the stay be lifted.  Krinsk Decl., ¶¶ 52; Order Lifting Stay of Case [Doc. 96].  Thereafter, Plaintiffs restarted discovery and prepared their class certification motion and a motion for summary judgment.  *Id*., ¶¶ 53-54.

MEF also recommended discovery efforts, prepared to oppose Plaintiffs' certification efforts, and prepared to brief motions for summary judgment.  *See* Stipulation Re: Schedule for Briefing on Motion for Class Certification [Doc. 70] at pp. 1-2; *see also* Order Lifting Stay of Case [Doc. 96] (setting May 17, 2019 as the deadline for Plaintiffs to file their motion for class certification).  Plaintiffs believed these dispositive motions were particularly important because the Court might adjudicate the merits of the parties' contract dispute through summary adjudication.  Krinsk Decl., ¶ 54.

The specter of potentially dispositive motions and class certification refocused the parties' settlement discussions, resulting in the parties participating in a second mediation before Mr. Rotman, on November 11, 2018.  *Id*., ¶ 55.  Only at this second mediation were the parties able to agree on material terms of the Settlement.  The final settlement agreement was not fully executed until March 11, 2019.  *Id*., ¶ 56.

## III.   SUMMARY OF THE PROPOSED SETTLEMENT

### A.   Proposed Class

Solely for purposes of the Settlement, the Parties agree to the conditional certification of the following Class: "All MEMBERS of an ME LOCATION since November 4, 2006, who paid a FEE INCREASE prior to the date of PRELIMINARY APPROVAL."  Excluded from the CLASS are: (a) any person who is an employee, director, officer, or agent of MEF or any of the RELEASED PARTIES; (b) any judge, justice, judicial officer, or judicial staff of the COURT; and (b) CLASS COUNSEL, MEF'S COUNSEL, and any of their staff.[6]  The parties estimate that there are approximately 1.67 million members within the Class.  Krinsk Decl., ¶ 58.

---

[6] This Class definition differs from the Nationwide Class in the FAC only in that it accounts for the applicable statutes of limitations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.     Voucher Settlement Benefit

MEF has agreed to provide Vouchers to Settlement Class Members who timely submit a valid claim in amounts corresponding to the amount of membership fee increases each class member paid: (i) those who paid in the aggregate $75 or less shall receive a $10 Voucher; (ii) those who paid between $75.01 and $125 shall receive a $20 Voucher; (iii) those who paid between $125.01 and $175 shall receive a $30 Voucher; (iv) those who paid between $175.01 and $225 shall receive a $40 Voucher; and (v) those who paid $225.01 or more shall receive a $50 Voucher. Settlement Agreement, § IV.

The total face value of all Vouchers issued to Settlement Class Members shall be $10 Million. *Id*. If the aggregate face value of Vouchers claimed by Settlement Class Members is less than $10 Million, then the Settlement Class Members who submitted Voucher Requests will receive *pro rata* increases in the value of their issued Vouchers to ensure that the total face value of issued Vouchers is $10 Million.  The Vouchers may be used at any ME Location to purchase retail products, massage sessions, enhancements, and/or facial sessions within 18 months of the Settlement's Effective Date, are fully transferable, and may be aggregated. *Id*.  However, the Vouchers may not be redeemed for cash or be used to pay monthly membership fees or tips. *Id*.

To receive a Voucher, a Class Member must submit a timely written "Voucher Request" attesting that he or she is a Class Member and did not receive any discretionary accommodations from his or her ME Location (i.e., free services, delayed fee increases, membership upgrades) when his or her monthly membership fee was increased.  *Id*. at § I(A)(OO).[7]  This Request must be submitted within sixty days following distribution of notice or such date the Court otherwise orders. *Id.* at § I(A)(PP).  The Voucher Request will be completed online, at the Settlement Website. *Id.* at § I(A)(LL).

---

[7] Defendants provided evidence that several individual Massage Envy locations negotiated concessions with customers or renegotiated the Membership Agreements.  Krinsk Decl., ¶ 61. Because MEF's Millennium Database does not identify those individuals who paid an increased monthly fee in exchange for such concessions, the parties agreed to a claims-made process requiring Class Members to certify that they received no such concessions and did not renegotiate their Membership Agreements. *Id*.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No: 3:16-cv-6450 MMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.      Anticipated Reaction based on Similar Settlement**

Plaintiffs anticipate that Class participation will be similar to that in the *Hahn* settlement. Krinsk Decl., ¶¶ 66-68, Ex. E (*Hahn* involved 1.1 million class members).  The *Hahn* settlement class similarly received non-monetary relief.  *Id*. (the *Hahn* settlement provided massage and spa services to class members).  And, the *Hahn* settlement involved a claims process similar to the process to which the parties have agreed here.  *Id*. (class members were provided with a unique id code, which was used to electronically claim the massage and spa services on the settlement website).  Given the parallels between this Settlement and the *Hahn* settlement, Plaintiffs believe that the Class will react comparably.

In the *Hahn* settlement, approximately 4.65% of the settlement class submitted a valid claim form.  *See* Krinsk Decl., ¶ 68; *Hahn*; Dkt. No. 344-1, at p. 17:21-22.  Assuming a similar participation rate it is estimated that the Settlement Class Members will receive, on average a $128.28 Voucher.  Krinsk Decl., ¶ 69.

**D.      Prospective Settlement Benefit**

MEF will make available the new template Membership Agreement, attached as Exhibit 5 to the Settlement Agreement, to ME Locations for use with their members.  Settlement Agreement, § V.  The new template Membership Agreement includes a provision allowing the ME Locations to increase a member's monthly membership fee only upon 45 days' advance written notice is provided to the member's email address on record or the member's last known physical address ("Advance Notice Provision").  *Id*., § V, Ex. 5.  The Parties agree that this Advance Notice Provision will allow each member a reasonable opportunity to cancel his or her membership agreement <u>before</u> incurring the noticed price increase.  *Id*., § V.[8]  MEF agrees to keep the Advance Notice Provision as a System Standard for two years after the Settlement's Effective Date.  *Id.* Upon the expiration of this two-year period, MEF shall have no further obligation to maintain the Advance Notice Provision as a System Standard.  *Id.*  Nothing in the Settlement Agreement restricts

---

[8] Previous iterations of the Membership Agreement(s) arguably allowed a price increase after only ten (10) days' notice.  Krinsk Decl., Exs. A-C.  Given that Membership Agreement required advance written notice to cancel the Membership, Plaintiffs believe ten days is insufficient time for individuals to cancel their Membership Agreement before a price increase became effective.

10

MEF or any ME Location from otherwise modifying the terms of a Class Member's membership, including during the two years following the Settlement's Effective Date. *Id.* Each Class Member who does not opt out of the Settlement will be bound by the new Membership Agreement beginning at least on the date the Court preliminarily approves the Settlement Agreement. *Id.*

### E.    The Release of Claims by the Class

In exchange for these settlement benefits, upon the Settlement's Effective Date, each Settlement Class Member shall fully release MEF, ME Locations, and other related "Released Parties" from the "Released Claims," as those terms are defined in Section I of the Settlement Agreement. Settlement Agreement, § XIII. The Released Claims encompass all claims asserted in the Action, including that MEF is a party to or has any liability under Settlement Class Members' Membership Agreements or any implied contract or covenant, or that MEF interfered with, induced the breach of, or required ME Locations to use specific terms in any Membership Agreement. Settlement Agreement, § I. The Released Claims also include those which could have been asserted in this Action or are based on the factual predicates upon which the FAC's claims are based. *Id*. "Settlements of this breadth are common and unobjectionable." *Rangel v. PLS Check Cashers of California, Inc*., 899 F.3d 1106, 1110–11 (9th Cir. 2018).

### F.    Proposed Notice and Class Members' Right to Opt Out or Object

Within 30 days of the Court's preliminary approval of the Settlement, MEF shall provide the Settlement Administrator with electronic lists including information concerning each Class Member from the Millennium Central Office Database. Settlement Agreement, § VII. The Settlement Administrator shall use these lists to provide direct, individual notice of the Settlement to Class Members *via* email or mail to each Class Member's last known email or mail address. *Id*. The Settlement Administrator will send a Short Form Notice, in the form the Court approves, to Class Members via email (and via mail for Class Members whose emailed notice is returned undeliverable). *Id*. The Short Form Notice will direct Class Members to a comprehensive and dedicated website that the Settlement Administrator creates within five days after the Court preliminarily approves the Settlement (the "Settlement Website"). *Id.* The Notices and the

Settlement Website shall provide the Court-approved Long Form Notice, advise Class Members of the pendency of the Action, including the nature of the Action and a summary of Plaintiffs' claims; the Settlement's essential terms; the Class Members' rights to submit Voucher Requests; the Class Members' right to object to the Settlement or request exclusion from the Class within 60 days following distribution of the Notices; the Class Members' right to appear before the Court at the Final Approval Hearing; and the date, time, and place of the Final Approval Hearing. *Id*. The Notices will also contain information regarding Class Counsel's request for an award of fees and costs, the Plaintiffs' requests for incentive awards, and the proposed plan of allocation of Vouchers. *Id*. Thus, the notice to the Class Members shall provide the necessary information for Class Members to make an informed decision regarding the proposed Settlement Agreement.

In addition, the Settlement Administrator will (1) create and maintain a toll-free number that Class Members can contact to request a copy of the Settlement Agreement or a Voucher Request form and/or obtain any other information concerning the Settlement; (2) process and record timely requests to be excluded from the Settlement; and (3) serve notice of the Settlement upon the appropriate state and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"). *Id.* MEF agrees to pay all reasonable Settlement Administration costs without reducing the total face value of the Vouchers to be issued to Settlement Class Members who timely submit valid Voucher Requests. *Id*.

### G.    The Vacatur of the MJOP Order

The Settlement is expressly conditioned on the Court's vacating the MJOP Order within 14 days of preliminary approval of the Settlement. Settlement Agreement, § VI. As set forth in the Parties' contemporaneously filed Joint Motion to Vacate, pursuant to Federal Rule of Civil Procedure 54(b), the Court may vacate or revise non-final orders when it is consonant with equity to do so, as is the case here. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2017 WL 2481782, at *5 n. 14 (N.D. Cal. June 8, 2017) ("Courts in this circuit have frequently vacated non-final orders in furtherance of settlements."). If the MJOP Order is not vacated in its entirety within 14 days of the Settlement's preliminary approval, then MEF has the option of

withdrawing from the Settlement.  Settlement Agreement, § VI.

**H.      Plaintiffs' Incentive Awards and Class Counsel's Attorneys' Fees and Costs**

Each named Plaintiff may request, and MEF has agreed not to object to, an incentive award up to $10,000 for his/her respective contribution in prosecuting the Class's claims.  Settlement Agreement, § XII.B.  Class Counsel may request an award of attorneys' fees and costs, and MEF has agreed not to object to any request for attorneys' fees and costs that does not exceed $3.3 Million.  *Id.*, § XII.A.  MEF agrees to pay any incentive award to Plaintiffs that does not exceed $30,000 in the aggregate and to pay any attorneys' fees and cost award that does not exceed $3.3 Million.  *Id.*, § XII.A-B.  The amount of any incentive award and any attorneys' fees and cost award is not a material term of the Settlement and shall not reduce the total face value of the Vouchers to be issued to Settlement Class Members who timely submit valid Voucher Requests.  *Id.*, §§ XI-XII.

**IV.    THE CLASS MEMBERS MEET ALL REQUIREMENTS FOR CLASS CERTIFICATION**

To effectuate the proposed Settlement, Plaintiffs move for certification of the Class.[9]  At the preliminary approval stage, the Court's threshold task is to ascertain whether the proposed class is maintainable under Federal Rule of Civil Procedure 23(a) and (b)(3).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  To qualify for certification of a "settlement-only class," the class must be so numerous that joinder of all members is impracticable; there must be questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the class.  FED. R. CIV. P. 23(a).  Additionally, common questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3) .

---

[9] Certification of the Class is solely for purposes of the Settlement.  Should this Settlement not be approved, the parties will return to the same litigation positions that they occupied prior to the Settlement.

1   Courts, however, should apply a lesser standard of scrutiny when reviewing certification of

2   classes for settlement than when determining the propriety of class certification for litigation.  *See*

3   *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 633 (9th

4   Cir. 1982).  This reduced standard reflects the fact that a class settlement foregoes further litigation,

5   and thus does not require that plaintiffs prove that the classwide prosecution of the case would be

6   manageable at trial.  *Id.*

7   **A.    Rule 23(a) is Satisfied**

8   1.    The Class is too Numerous to Permit Joinder

9   A case may be certified as a class action only if "the class is so numerous that joinder of all

10   members is impracticable."  FED. R. CIV. P. 23(a)(1).  Numerosity is undisputed here.  The Parties

11   estimate there are approximately 1.7 million Class Members.  Krinsk Decl., ¶ 58; the Declaration

12   of Luanne Sacks, concurrently filed herewith, ("Sacks Decl."), ¶ 29.  Accordingly, the Class is

13   sufficiently numerous to satisfy Rule 23(a)(1).

14   2.    This Action Presents Common Questions of Law or Fact

15   Rule 23(a)(2) requires that there be one or more questions common to the Class.  *See*

16   *Hanlon*, 150 F.3d at 1019.  "Commonality requires the plaintiff to demonstrate that the class

17   members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

18   (2011).  Here, all Class Members' claims arise from the same contention—that increasing Class

19   Members' monthly membership fees above the initial amount stated in their Membership

20   Agreements violates those agreements.  Plaintiffs thus believe the following questions of law or

21   fact are common to all Class Members: (1) whether the terms of the Class Members' Membership

22   Agreements permit any increase in membership fees, (2) whether MEF is liable for any membership

23   fee increases; and (3) whether the Class Members can recover restitution from MEF of membership

24   fee increases paid to the ME Locations (and not to MEF).  The commonality requirement is

25   therefore satisfied.

26   3.    Plaintiffs' Claims are Typical of Those of the Class

27   Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical

28

14

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No: 3:16-cv-6450 MMC

of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).  Typicality does not require total identity between the Plaintiffs and the Class Members.  *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Rather, typicality is satisfied if Plaintiffs' claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and [are] based upon the same legal theory." *Jordan v. Los Angeles Cty.,* 669 F.2d 1311, 1321 (9th Cir. 1982); *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) ("representative claims are 'typical' if they are reasonably co-extensive with those of absent class members") (citation omitted).

Here, Plaintiffs contend their and the Class Members' claims stem from the same alleged common course of conduct.  Specifically, Plaintiffs contend that they and all Class Members are or were members of a ME Location and signed Membership Agreements containing substantially similar pricing, automatic renewal and termination provisions and had their monthly membership fees increased. The Plaintiffs' claims therefore are typical of the Class Members' claims, because they must satisfy the same legal elements that Class Members must satisfy, share identical legal theories with Class Members, and have similar alleged injuries.  Rule 23(a)(3) is satisfied.

> 4. <u>Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class Members</u>

Rule 23(a)(4)  requires that the Plaintiffs will "fairly and adequately" protect the interests of the Class.  The two-prong test for determining adequacy is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003).  Both prongs are satisfied here.

First, the Plaintiffs' interests are aligned with, and not antagonistic to, the Class Members' interests.  As explained above, Plaintiffs share the same claims and legal theories as the Class Members, and the proposed Settlement affords Plaintiffs and Class Members the same benefits.  Moreover, Plaintiffs have diligently represented the Class Members' interests through two years of litigation, including dispositive motion practice, discovery, and more than a year of extensive, and often antagonistic, settlement negotiations.  Krinsk Decl., ¶ 99-100.

1   Second, Class Counsel have extensive experience litigating and settling class actions,

2   including consumer cases, and are well qualified to represent the Class. *Id.*, ¶¶ 98-99.  Class

3   Counsel, along with Plaintiffs, have vigorously protected the Class Members' interests and

4   negotiated extensively to maximize the recovery for all Class Members, as evidenced by the

5   proposed Settlement's terms.

### B.   Rule 23(b)'s prongs are satisfied

6

7   #### 1.   Common Questions of Law or Fact Predominate.

8   The Supreme Court has defined the predominance factor as establishing "whether proposed

9   classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v.*

10  *Windsor*, 521 U.S. 591, 623 (1997).  "The predominance inquiry asks whether the common,

11  aggregation-enabling, issues in the case are more prevalent or important than the non-common,

12  aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

13  (2016) (internal quotation omitted).  Plaintiffs believe their (and the Class Members') claims center

14  on three questions: (i) whether the increases in their monthly membership fees breached their

15  Membership Agreements; (ii) whether MEF, a nonparty to their Membership Agreements, is liable

16  for any such breach; and (iii) whether MEF can be required to pay restitution when Plaintiffs (and

17  the Class Members) did not pay any monthly membership fees to MEF.  These common questions

18  predominate over any individual questions that might exist because the allegedly unauthorized

19  membership fee increases affected all Class Members in the same manner.  Accordingly, this prong

20  of Rule 23(b) is satisfied.

21  #### 2.   A Class Action is the Superior Method of Adjudication

22  To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors

23  for courts to consider:

24  > (A) [T]he class members' interests in individually controlling the prosecution . . .
25  > of separate actions; (B) the extent and nature of any litigation concerning the
    > controversy already begun by . . . class members; (C) the desirability . . . of
26  > concentrating the litigation of the claims in the particular forum; and (D) the likely
    > difficulties in managing a class action.
27

28  Each of these factors supports certifying the Class here for settlement purposes.

This case involves over a million Class Members, who have all been injured in a relatively small amount. Krinsk Decl., ¶ 64. Therefore, there is little incentive for any of the Class Members to individually pursue separate actions. *See Carnegie v. Household Int'l, Inc*., 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30"). But, even if the individual Class Members were inclined to seek relief, such repetitious litigation would not benefit the parties or the Court. *McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB, 2014 WL 1779243, at *16 (C.D. Cal. Jan. 13, 2014) ("It is more efficient to resolve the common questions . . . in a [single] proceeding rather than to have individual courts separately hear these cases"). Certification is superior because concentrating the Class Members' claims in a single forum prevents the risk of inconsistent outcomes, reduces litigation costs, and promotes greater efficiency. *Negrete v. Allianz Life Ins. Co. of N. Am*., 238 F.R.D. 482, 493 (C.D. Cal. 2006).

Finally, there are no serious manageability difficulties presented by conditionally certifying the Class for settlement purposes because there will be no trial. *See Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.") Accordingly, the proposed Settlement satisfies Rule 23(b)'s second prong.

For each of the above reasons, Plaintiffs request that the Court provisionally certify the following Class pursuant to Rule 23 of the Federal Rules of Civil Procedure: "All Members of an ME Location since November 4, 2006, who paid a Fee Increase prior to the date of Preliminary Approval." Settlement Agreement, § I.

## V.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

The law favors settlement, particularly in class actions and complex cases where substantial resources can be conserved by avoiding the time, costs, and rigors of prolonged litigation. *Pilkington v. Cardinal Health (In re Syncor ERISA Litig.*), 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec*., 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle* ("*City of Seattle*"), 955 F.2d 1268, 1276 (9th Cir. 1992). Additionally, the Ninth Circuit

"has long deferred to the private consensual decision of the parties" to settle.  *See Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009).  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027; *see also Chavez v. WIS Holding Corp.*, No. 07cv1932, 2010 WL 11508280, at *1 (S.D. Cal. June 7, 2010) ("The Court gives weight to the parties' judgment that the settlement is fair and reasonable.") (*citing In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995)).

When the proposed Settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, preliminary approval is appropriate.  *McDonald v. Bass Pro Outdoor World, LLC*, No. 13-cv-889-BAS, 2014 WL 3867522, *6 (S.D. Cal. Aug. 5, 2014).  The proposed Settlement warrants approval under these standards.

### A.   The Proposed Settlement Provides Excellent Relief to Class Members

To evaluate the fairness of the settlement benefits, the Court should "compare the terms of the compromise with the likely rewards of litigation."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  A settlement, however, is not judged solely against what plaintiffs would have recovered at trial had they prevailed and is not required to provide full recovery in order to be fair.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.").  Settlement is a compromise: "in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."  *Officers for Justice*, 688 F.2d at 624.

This Settlement provides excellent relief for Class Members.  Settlement Agreement, § IV.

The issued Vouchers may be redeemed at any ME Location for retail products, massage sessions, enhancements, and/or facial sessions but may not be redeemed for cash, to pay monthly membership fees, or to pay tips. *Id.* The issued Vouchers also are fully transferrable and may be aggregated. *Id.* Courts have recognized that such settlement benefits are permissible and do not render a settlement unfair or unreasonable. *See, e.g., Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833 (N.D. Cal. 2017) (granting final approval of settlement providing $10 vouchers where "class members who choose to use their voucher have the opportunity to realize a $10 value"); *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) (approving settlement where class members could redeem voucher for services). The Settlement also imposes all reasonable Settlement Administration costs on MEF, which administrative costs MEF estimates to be at least $450,000. Settlement Agreement, § VII; Sacks Decl., ¶ 38. The Settlement additionally requires MEF to pay Class Counsel's attorneys' fees and costs and Inventive Awards to the Plaintiffs up to the amounts to which the Parties agreed in the Settlement, § XII.

Each Settlement Class Member will receive a Voucher for $10-50, at minimum. However, as MEF is required to issue $10 million in Vouchers to the Settlement Class, Plaintiffs estimate that the average Voucher provided to the Settlement Class members will be $128.28, enough to purchase approximately 90% of the goods or services offered at ME Locations. Krinsk Decl., ¶ 71. The amount of Voucher to be paid to the Settlement Class is also proportional to the total liability. On an individual basis, the Vouchers represent at least thirteen percent of Class Members' alleged individual damages. Krinsk Decl., ¶ 63; Settlement Agreement at ¶¶ 9-10. However, because of the $10 million in Vouchers to be issued, it is more likely that the Voucher provided to each Class Member will provide a benefit equal the amount of alleged additional monthly membership fees paid, if not more. Krinsk Decl., ¶ 64 (the average individual loss was calculated to be between $25.01-50.00[10] and average individual Voucher amount is estimated to be $128.28). This is a substantial value. *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act*

---

[10] This average is based on discovery produced in preparation for the parties' mediations from MEF's Millennium Database. Krinsk Decl., ¶ 64, n. 4. The average is likely higher as of the filing of this Motion. Updated information will be provided from the Claims Administrator for the Final Approval hearing.

1  *(FACTA) Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (finding a $5 or $30 [voucher] that represents

2  5% to 30% of the recovery that might have been obtained was fair and adequate in a consumer class

3  action).[11]

4        When the Settlement is viewed in the aggregate, the Settlement also provides significant

5  relief.  Plaintiffs estimate that the total potential recovery, at trial, is in excess of $130 million

6  dollars.  *Id.*, ¶ 49 (For each month the case continues, additional damages accrue.).  The Settlement

7  represents approximately 10 percent of the expected amount that the Class may have received at

8  trial.  This is well within the bounds of reasonableness in a consumer class action.  *See City of*

9  *Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12–1609, 2015 WL 965696, at *7-8 (W.D. La.

10  Mar. 3, 2015) (finding that a "7.4%–10.3% [recovery] of estimated provable damages" amounts to

11  "a high degree of success" because "[t]he typical recovery in most class actions generally is three-

12  to-six cents on the dollar.").

13        Accordingly, experience dictates that the Class Members' interests are better served by the

14  proposed Settlement.  *See In re Linkedin User Privacy Litig.,* 309 F.R.D. 573, 587 (N.D. Cal. 2015)

15  ("Immediate receipt of money through settlement, even if lower than what could potentially be

16  achieved through ultimate success on the merits, has value to a class, especially when compared to

17

18      [11] The Settlement was conditioned on receipt of confirmatory discovery regarding the goods
and services that can be purchased from any ME Location.  Settlement Agreement, at ¶ 49.  Review

19  of this discovery confirms that the price of all goods and service offered by ME Locations range
between $6 and $428, with an average price of approximately $50 (excluding massage chairs sold

20  in partnership with their manufacturer).  Krinsk Decl., ¶ 71.  The Vouchers with the lowest face
value ($10) can also be used to purchase up to 38 different products from ME Locations with no

21  additional out-of-pocket expense.  *Id.*  Vouchers with $50 face value can be used to purchase up to
242 different products with no additional payment. *Id.*  However, the vast majority of the products

22  and services (all but 19 products and a handful services) are priced less than $128.28 (the expected
average recovery).  *Id.*.  Accordingly, this in-kind Settlement does not entail the type of coupon

23  relief disfavored under CAFA.  *In re Easysaver Rewards Litig.*, 906 F.3d 747, 755-56 (9th Cir.
2018); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950–51 (9th Cir. 2015)

24  (CAFA legislative history "focuses on settlements that involve a discount—frequently a small
one—on class members' purchases from the settling defendant").  In addition, the Vouchers are

25  fully transferrable and provide far more flexibility than coupon benefits.  They expire more than
one year from issuance, may be used at any time before expiration, may be redeemed for any retail

26  products, massage sessions, enhancements, and/or facial sessions offered at any ME Location, and
may be combined with other Vouchers or promotions.  *Compare Easysaver*, 906 F.3d at 753

27  (coupon benefit expired one year after distribution, could not be used during lead-up to certain
holidays or for same-day orders, and could not be combined with other promotions).

28

risky and costly continued litigation.")  Indeed, in contrast to the tangible, immediate benefits of the Settlement, the outcome of continued litigation and a trial against MEF is uncertain and could add years to this Action.  Krinsk Decl., ¶¶ 79-84.  MEF vigorously denies Plaintiffs' allegations of wrongdoing and its liability.  *See* Sacks Decl., ¶¶ 35-36.

Absent settlement, Plaintiffs anticipate that MEF would defend this action aggressively prior to trial, including a motion for summary judgment and opposition to class certification.  *Id*.[12] In particular, MEF denies that it has entered into any membership agreements with the Plaintiffs or Class Members and contends that neither Plaintiffs nor the Class Members have paid any membership fees to MEF.  *See generally* Answer;.  According to MEF, any monthly membership fee increase is solely at the behest and to the benefit of the independently owned and operated ME Locations.  *Id.*  MEF also argues that the Class Members' membership agreements permitted ME Locations to increase monthly membership fees following the initial membership term if Class Members were provided adequate notice of the increase.  *Id.*

Finally, MEF contends that the claims of Plaintiffs and Class Members were released by the *Hahn* and *Zizian* settlements and has expressed its intention to seek appellate review of the Court's Orders to the contrary were this Action to continue and Plaintiffs obtain a favorable result. *See* Sacks Decl., ¶ 36.  In particular, MEF will argue that a Ninth Circuit opinion filed after the MJOP Orders supports MEF's view that Plaintiffs' claims are barred by the prior final court-approved class action settlements.  *Rangel*, 899 F.3d 1106.  MEF contends that the *Rangel* opinion clarifies that where, as in *Zizian*, a class action is resolved through a negotiated settlement and release, California law requires courts to look to the text of the parties' settlement agreement to determine that agreement's preclusive effect, and the "res judicata effect of a settlement tends to be a bargained term of the settlement agreement."  *Rangel*, 899 F.3d at 1110, n.3.  *See* Sacks Decl., ¶ 36.

Accordingly, absent a settlement, Plaintiffs and the Class Members could recover nothing.

---

[12] Based on the undersigned counsel's experience with MEF and its counsel, Plaintiffs fully expect that, absent settlement, MEF will vigorously litigate this case to trial.   Krinsk Decl., ¶ 75 (*Hahn* only settled after the parties had litigated class certification and cross-motions for summary judgment and were weeks away from trial.).

1   But, any recovery may take years to realize.  In reaching the Settlement now, Plaintiffs and their

2   experienced counsel have ensured a favorable recovery for the Class Members and avoided

3   significant expense, delay, and uncertain results.

4           **B.     The Settlement is the Product of Well-Informed, Vigorous, and Thorough
               Arm's-Length Negotiations**

5

6           "Before approving a class action settlement, the district court must reach a reasoned

7   judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

8   among, the negotiating parties."  *City of Seattle*, 955 F.2d at 1290.  "A presumption of correctness

9   is said to attach to a class settlement reached in arm's-length negotiations between experienced

10  capable counsel after meaningful discovery."  *In re Heritage Bond Litig*., No. 02-ML-1475 DT,

11  2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005).

12          Here, the Settlement was negotiated only after the parties had conducted a significant

13  amount of discovery.  Krinsk Decl., ¶ 74.  The parties had also litigated key legal theories before

14  the Settlement.  *Id.*, ¶ 75; Stipulation Re: Schedule for Briefing on Motion for Class Certification

15  [Doc. 70], at pp. 1-2.  The parties thus were well-informed of the strength and weakness of their

16  respective cases when they negotiated the Settlement.  *Id.*  It is likely for these reasons that the

17  parties' settlement discussions were lengthy and contentious and required the assistance of Mr.

18  Rotman, an experienced private mediator.  The involvement of a neutral mediator is "a factor

19  weighing in favor of a finding of non-collusiveness."  *In re Bluetooth Headset Prods. Liability*

20  *Litig*., 654 F.3d 935, 948 (9th Cir. 2011).  Nothing in these extensive negotiations presents any

21  reason to doubt the Settlement's fairness.

22          **C.     The Recommendation of Experienced Counsel Favors Approval.**

23          In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel

24  should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.,* No. 08-01520

25  SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009).  Here, Class Counsel has extensive experience

26  litigating and settling consumer class actions and other complex matters and has conducted an

27  extensive investigation into the factual and legal issues raised in this Action.  Krinsk Decl., ¶ 72.

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No: 3:16-cv-6450 MMC

1  Based on Class Counsel's experience in the *Hahn* Action, counsel calculated the anticipated

2  recovery to the Class and believe that this Settlement provides real and substantive relief to Class

3  Members.  *Id.*, ¶¶ 73-87.  Class Counsel has weighed the benefits of the Settlement against the

4  inherent risks and expense of continued litigation and strongly believes that the proposed

5  Settlement is fair, reasonable, and adequate.  *Id.*, ¶ 87.

6      **D.      Plaintiffs will Request Reasonable Attorney's Fees and Costs and Incentive
          Awards**

7

8          Class Counsel intends to request $3.3 million in attorneys' fees and costs when seeking final

9  approval of the Settlement, representing 24 percent of the total benefits to be received by the

10  Settlement Class.  Krinsk Decl., ¶ 94; *see also In re Bluetooth,* 654 F.3d at 947 ("[C]ourts typically

11  calculate 25% of the [common] fund as the 'benchmark' for a reasonable fee award.").  A lodestar

12  analysis likewise confirms that Class Counsel's anticipated fee request is reasonable.  As of March

13  22, 2019, Class Counsel has expended 3,032 hours over two years litigating this action at a blended

14  rate of $506 per hour, resulting in a lodestar of $1,533,460.75.  Krinsk Decl., ¶¶ 92-93.  The

15  requested fee equates to a modest 2.11 multiplier, and possibly a lower multiplier depending on

16  how much work Class Counsel performs prior to final Settlement approval.  Krinsk Decl., ¶ 94; *see*

17  *also Vizcaino,* 290 F.3d at 1051 n. 6 (approving 3.65 multiplier and noting that multipliers from

18  one to four are frequently awarded).

19          It is well established that courts have discretion to approve incentive awards to Plaintiffs as

20  compensation for their expenditure of time and effort for the benefit of others and for having

21  undertaken the risks inherent in serving as a named plaintiff.  *See, e.g., Staton*, 327 F.3d at 976-77.

22  The Incentive Awards that MEF has agreed to pay to each Plaintiffs ($10,000) are likewise well

23  within the customary range of awards in cases of this magnitude and are not extraordinary.  *Chu v.*

24  *Wells Fargo Invs., LLC*, Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645, at *5 (N.D.

25  Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs) (collecting

26  cases).  Nevertheless, at the Final Approval Hearing, Plaintiffs will independently move the Court

27  and establish that the requested attorney's fees and incentive awards are reasonable.

28

The Settlement here bears no obvious deficiencies: the Settlement reveals no apparent unfairness and no "unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08–MDL–1958, 2012 WL 5055810, at *6 (D. Minn. Oct. 18, 2012); *see also Burden v. SelectQuote Ins. Servs.*, No. C 10-05966 SBA, 2013 WL 1190634, at *3 (N.D. Cal. Mar. 21, 2013). Accordingly, this Settlement should be Preliminarily Approved.

## VI.    THE PROPOSED NOTICE PLAN COMPORTS WITH DUE PROCESS

Rule 23(c)(2)(B) provides that for Rule 23(b)(3) classes, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Due process requires the best notice practicable, reasonably calculated under the circumstances, to apprise the class member of the pendency of the class action and to give that class member a chance to be heard, object to, or opt out of the proposed settlement. *See Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994). The notice to the Class also must include a general description of the proposed Settlement, including the aggregate amount of the Settlement. *See Churchill Village*, 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374 (9th Cir. 1993).

The Parties have agreed to a proposed notice plan to be administered by the Settlement Administrator as described above.[13]  Individual direct notice will be sent to all Class Members *via* either email or first-class mail as appropriate based upon the information provided by MEF from the Millennium Database. Settlement Agreement, § VII. The Settlement Administrator will also utilize best practices address updating methods for any email and mailed notice returned as undelivered.  *Id.*  The Millennium Database provides information about the Class Members' identity and contact information for purposes of distributing Class Notice.  Krinsk, ¶ 42.  Notice also will be published through a dedicated Settlement Website, which the Settlement Administrator generates, administrates, and maintains.  Settlement Agreement, § VII.  The Class Notice is

---

[13]  In addition to Class Notice, the Administrator will serve notice of the Settlement to appropriate state and federal officials pursuant to CAFA.  Settlement Agreement, § VII; 28 U.S.C. § 1715.

estimated to reach more than 95% of Class Members.[14]  *See* Azari Decl., ¶ 26.  And the Notice will provide all the necessary information to allow a Class Member to make an informed decision regarding the Settlement.  *See, supra,* § III(F).

The proposed Class Notice program comports with due process and is the best notice practicable under the circumstances.  *See Minter v. Wells Fargo Bank*., *N.A.*, 283 F.R.D. 268, 276 (D. Md. May 22, 2012) (where "all class members have been identified by name from Defendant records" and notice administrator used address updating methods, supplement notice by publication not necessary to satisfy due process).  The proposed Class Notice program, combined with the Class Members' right to exclude themselves from the Settlement, ensures that the Class Members' due process rights are amply protected and satisfies all of Rule 23's requirements.  *See Phillips Petrol. Co. v. Shutts*, 472 U.S 797, 812 (1985).

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and direct Notice of the Settlement to Class Members as set forth in the Settlement Agreement.

Date: April 15, 2019                      Respectfully submitted,

FINKELSTEIN & KRINSK LLP


By: /s/ Jeffrey R. Krinsk

Jeffrey R. Krinsk, Esq.
Trenton R. Kashima, Esq.

*Attorneys for Plaintiffs and
the proposed Class*

---

[14] The Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide states that it is reasonable to reach between 70% and 95% of class members.  *Id.* at 3.