1   Jeffrey R. Krinsk, Esq.  (CA Bar No. 109234)
    jrk@classactionlaw.com
2   Trenton R. Kashima, Esq. (CA Bar No. 291405)
    trk@classactionlaw.com
3   FINKELSTEIN & KRINSK LLP
    550 C Street, Suite 1760
4   San Diego, California 92101
    Telephone: (619) 238-1333
5   Facsimile: (619) 238-5425

6   *Attorneys for Plaintiffs*
    *and the proposed Settlement Class*

7

8

9                  **UNITED STATES DISTRICT COURT**

10                **NORTHERN DISTRICT OF CALIFORNIA**

11
    BAERBEL MCKINNEY-DROBNIS,            Case No: 3:16-cv-6450 MMC
12  JOSEPH B. PICCOLA, and  CAMILLE
    BERLESE, individually and on behalf of all   **PLAINTIFFS' CONSOLIDATED**
13  others similarly situated              **RESPONSE TO CLASS MEMBER**
                                          **OBJECTIONS TO PROPOSED**
14          Plaintiffs,                    **SETTLEMENT**

15          v.
                                          Date:      February 28, 2020
16  MASSAGE ENVY FRANCHISING, LLC, a     Time:      9:00 a.m.
    Delaware Limited Liability Company,   Courtroom: 7 – 19th Floor
17                                        Judge:     Hon. Maxine M. Chesney
            Defendant.
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF OBJECTIONS ..........................................................................1

        A.      The Oreshack Objection .............................................................................1

        B.      The Dewitt Objections ...............................................................................2

                1.      Relevant Background ......................................................................2

                2.      The Dewitts' Objections .................................................................4

        C.      The Anand Objection .................................................................................4

        D.      The Rehwaldt Objection ............................................................................5

        E.      The Smeins Objection.................................................................................5

        F.      The Smith Objection ..................................................................................6

III.    ARGUMENT ..........................................................................................................6

        A.      The Notice to the Class was Proper and any Deficiencies were Raised with the Court and Corrected ...............................................................................................6

                1.      Class Notice was provided to identifiable Class Members...............6

                2.      Class Notice provided Class Members with the information needed to participate in, object to or opt out of the Settlement...........................................8

                3.      Class Members had a Reasonable Method of Dispute Resolution ...................9

        B.      This Settlement is a Result of a Fair Compromise ......................................9

        C.      The Settlement Treats Class Members Equally ..........................................10

                1.      The Settlement does not Undercut any Class Member's Claims....................10

                2.      All Class Members Receive Recovery Based on their Respective Injury and the Settlement Does Not Impermissible Favor Any Class Members ..............12

        D.      Plaintiffs and Class Counsel are Adequate Representatives........................14

        E.      The Release Provided under the Settlement is Not Over Broad...................16

                1.      The Scope of the Release is Not Overbroad ...................................16

                2.      The Injunctive Relief is not an Extension of the Release ................17

        F.      This is Not a Coupon Settlement ...............................................................19

- i -

       G.       The Settlement is not a Result of Collusion...................................................21

IV.     CONCLUSION..............................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC,*
   243 F.R.D. 377 (C.D. Cal. 2007) ................................................................................. 20

*Amunrud v. Sprint Commc'ns Co.*
   L.P., 2012 WL 443751 (D. Mont. Feb. 10, 2012) ........................................................ 29

*Bellinghausen v. Tractor Supply Co.,*
   306 F.R.D. 245 (N.D. Cal. 2015) ................................................................................ 29

*Hughes v. Microsoft Corp.,*
   No. 98-CV-01646, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ............................7

*Brown v. Ticor Title Ins.,*
   982 F.2d 386 (9th Cir. 1992) ...................................................................................... 20

*Browne v. Am. Honda Motor Co.,*
   No. 09-CV-06750-MMM, 2010 WL 9499072 (C.D. Cal. July 29, 2010) ................. 7, 16

*Bruno v. Quten Research Inst., LLC.,*
   No. SACV 1100173, 2012 WL 12886843 (C.D. Cal. July 16, 2012) .......................... 12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal.4th 163 (1999) ................................................................................................. 17

*Chavez v. PVH Corp.,*
   No. 13-CV-01797, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015) ................................. 22

*City of Greenville v. Syngenta Crop Prot., Inc.,*
   904 F. Supp. 2d 902 (S.D. Ill. 2012) .......................................................................... 28

*Crowley v. Katleman,*
   8 Cal.4th 666 (1994) ................................................................................................... 25

*Custom LED, LLC v. eBay, Inc.,*
   No. 12-CV-00350, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) .............................. 22

*Dardarian v. Officemax N. Am., Inc.,*
   No. 11-cv-00947, 2013 WL 12173924 (N.D. Cal. July 12, 2013) .............................. 26

*Eisen v. Carlisle and Jacquelin,*
   417 U.S. 156 (1974) .................................................................................................... 12

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ...................................................................................... 21

*Fernandez v. Victoria Secret Stores, LLC,*
   No. 06–4149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ....................................... 26

*Ferrington v. McAfee, Inc.,*
   No. 10-cv-01455, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) .................................. 19

*Foos v. Ann, Inc.,* 2013
    WL 5352969 (S.D. Cal. Sep. 24, 2013) ..................................................................... 26

*Gold v. Lumber Liquidators, Inc.,*
    323 F.R.D. 280 (N.D. Cal. 2017) ........................................................................... 21

*Hahn v. Massage Envy Franchising, LLC*
    No. 12CV153, 2014 WL 5099373 (S.D. Cal. Apr. 15, 2014) ......................... 14, 19, 22

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ........................................................................ 20, 21

Hesse v. Sprint Corp.,
    598 F.3d 581 (9th Cir. 2010) ................................................................................. 22

*Hughes v. Microsoft Corp.,*
    No. 98-CV-01646, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ........................... 7

*In re Anthem, Inc. Data Breach Litig.,*
    327 F.R.D. 299 (N.D. Cal. 2018) ...................................................................... 13, 16

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ........................................................................... 27, 28

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.,*
    270 F.R.D. 521 (N.D. Cal. 2010) ........................................................................... 17

*In re Easysaver Rewards Litig.,*
    906 F.3d 747 (9th Cir. 2018) ........................................................................... 25, 27

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) .................................................................................. 27

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... 18

*In re Online DVD-Rental Antitrust Litig.,*
    779 F3d 934 (9th Cir 2015) ........................................................................... 26, 28

*In re Pacific Enterprises Securities Litigation,*
    47 F.3d 373 (9th Cir.1995) .................................................................................. 28

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ......................................................................................... 17

*In re TracFone Unlimited Serv. Plan Litig.,*
    112 F. Supp. 3d 993 (N.D. Cal. 2015 ..................................................................... 29

*Knapp v. Art.com,*
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ..................................................................... 26

*Lane v. Facebook, Inc.,*
    696 F.3d 81 (9th Cir. 2012) .................................................................................. 19

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ............................................................................... 15

*Louisiana Mun. Police Employees Ret. Sys. v. Dunphy*,
  2008 WL 700181 (D.N.J. Mar. 13, 2008)...........................................................................20

*Metrow v. Liberty Mut. Managed Care LLC*,
  No. EDCV161133, 2017 WL 4786093 (C.D. Cal. May 1, 2017) ................................21

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)............................................................................................................12

*Mycogen Corp. v. Monsanto Co.*,
  28 Cal.4th 888 (2002) ........................................................................................................25

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
  660 F.2d 9 (2d Cir. 1981) ..................................................................................................24

*Oasis W. Realty, LLC v. Goldman*,
  51 Cal. 4th 811 (2011) .......................................................................................................17

*Perdue v. Kenny A.*,
  559 U.S. 542 (2010)............................................................................................................29

*Perkins v. Linkedin Corp.*,
  No. 13-CV-04303, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ................................16

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)............................................................................................................13

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir.2000) ...........................................................................................28

*Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*,
  678 F.3d 640 (8th Cir. 2012) ............................................................................................21

*Reibstein v. Rite Aid Corp.*,
  761 F. Supp. 2d 241 (E.D. Pa. 2011) ...............................................................................19

*Sample v. Centurylink Commc'ns LLC*,
  No. CV-16-00624, 2018 WL 3997484 (D. Ariz. Aug. 21, 2018) ..............................23

*Seegert v. Lamps Plus, Inc.*,
  377 F. Supp. 3d 1127 (S.D. Cal. 2018)............................................................................27

*Sobel v. Hertz Corp.*,
  53 F. Supp. 3d 1319 (D. Nev. 2014) ................................................................................29

*Staton v. Boeing Co.*,
  327 F.3d 938  (9th Cir. 2003) ...........................................................................................28

*Thomas v. Montelucia Villas, LLC*,
  232 Ariz. 92 (2013).............................................................................................................17

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
  No. EDCV161953, 2017 WL 4082419 (C.D. Cal. Sept. 13, 2017)............................18

*Walker v. Presidium, Inc.*,
  296 S.W.3d 687 (Tex. App. 2009)....................................................................................17

*Wershba v. Apple Computer, Inc.,*
   91 Cal. App. 4th 224 (2001) ................................................................................................ 17

*Williams v. MGM-Pathe Commc'ns Co.,*
   129 F.3d 1026 (9th Cir. 1997) ..............................................................................................28

*Wolff v. Cash 4 Titles,*
   2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ...................................................................... 28

**Statutes**

28 U.S.C. § 1983.......................................................................................................................... 29

FED. R. CIV. P. § 23............................................................................................................... 16, 20

**Other Authorities**

Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 14.6 (4th Ed. 2007 update) ........ 2

Plaintiffs Baerbel McKinney-Drobnis, Joseph B. Piccola, and Camille Berlese respectfully submit this response to objections to the Settlement (ECF Nos. 124, 126-27, 133, Attachment 1):[1, 2]

## I.     **INTRODUCTION**

The reaction to the present case has been overwhelmingly positive.  Out of approximately 1.7 million Class Members, only seven objected.  This supports approval of the Settlement.  *See Hughes v. Microsoft Corp.*, No. 98-CV-01646, 2001 WL 34089697, at *1, *8 (W.D. Wash. Mar. 26, 2001).  However, that a handful objectors have come forward does not alter this conclusion.  *Browne v. Am. Honda Motor Co.*, No. 09-CV-06750-MMM, 2010 WL 9499072, at *15 (C.D. Cal. July 29, 2010) ("The fact that there is opposition does not necessitate disapproval of the settlement. Instead, the court must independently evaluate whether the objections being raised suggest serious reasons why the proposal might be unfair." (alteration and citation omitted)).

Indeed, most of the objections assert that there should be no settlement without securing 100% of the contested damages in this case (if not more).  But settlements are creatures of compromise and this Settlement is no different.  Instead, the relief provided to the Class represents a reasonable compromise of the claims, secured after contentious litigation and negotiations.

Additionally, many of the objections to the notice and claims procedure are simply mistaken.  The Settlement provided a robust notice process and a clear avenue for the Class to claim a Voucher, object to the Settlement, get additional information, or exclude themselves altogether.  Accordingly, the objections asserted should be overruled.

## II.     **SUMMARY OF OBJECTIONS**

### A.     **The Oreshack Objection**

Theodore H. Frank, of the Center for Class Action Fairness, represents Kurt Oreshack who

---

[1] David Lapa (represented by counsel) failed in an attempt to exclude himself, while objecting to the Settlement.  Administrative Motion [ECF No. 125].  The Court accepted his motion for exclusion, and properly rejected his objection given that he is not a member of the Settlement Class.  Order Re: Administrative Motion [ECF No.131].  Accordingly, Mr. Lapa's objections are not addressed here.  Nevertheless, Mr. Lapa's concerns are addressed through this response to the other objections.

[2] The Settlement Agreement is attached as Exhibit D to the Declaration of Jeffrey Krinsk, in support of Plaintiffs' Motion for Preliminary Approval [ECF No. 103-1].  This Motion adopts the same defined terms as used within the Settlement Agreement.

objects to the Settlement on several grounds. *See generally,* Oreshack Objection, ECF No. 124. Mr. Oreshack claims that there is an incurable conflict between Former and Current Members[3] of the Settlement Class because Former Members do not desire to do business with Defendant's clinics and may be required to pay more for products and services than Current Members. *Id.*, at p. 6. As a consequence, Mr. Oreshack asserts that Plaintiffs (and their counsel) cannot represent both Former and Current Members simultaneously, and the Settlement should not be approved. *Id.*, at pp. 3-7.

Mr. Oreshack also makes the curious argument that the injunctive relief provided under the Settlement (requiring 45-days advance written notice before any future price increases) is actually an "impermissible release of class members' future-accruing claims. *Id.*, at pp. 18-21.

Mr. Oreshack also asserts that the requested attorneys' fees are disproportionate to the "coupon" benefit provided to the Class, and when combined with existence of the purported reversionary aspects of the attorneys' fees and a "clear sailing clause," indicates a collusive settlement. *Id.*, at pp. 8-18. Mr. Oreshack, therefore, argues that Counsel's fees should be reduced and/or only awarded after the redemption rate of issued Vouchers is known (if the Settlement is approved at all). *Id.*, at pp. 21-25.

**B. The Dewitt Objections**

Mr. Anthony DeWitt and Ms. Ginger DeWitt are spouses who object to the Settlement. DeWitt Objection, ECF Nos. 126-27. Ms. DeWitt's objection does not include any legal or factual arguments, instead it appears that Ms. DeWitt joins her husband's objection to the Settlement. *Compare* ECF No. 127 *with* ECF No. 126. Plaintiffs will address these objections collectively.

1. Relevant Background

Some background regarding the DeWitt objections is required. On July 1, 2019, MEF provided the Settlement Administrator Class Data for approximately 1.7 million Class Members. Declaration of Mike Scott in Support of Stipulation to Change Hearing Date and Briefing Schedule for Final Settlement Approval ("Scott Decl."), ECF No. 129-1, at ¶ 5. Notice was subsequently provided to the identified Class Members. *Id.*, at ¶ 6. The Class Data was drawn from MEF's Millennium Database.

---

[3] "Former Members" refers to those individuals who have terminated their Membership. "Current Members" are those individuals with an active Membership.

Settlement Agreement, at ¶ 21(A).

On September 12, 2019, Class Counsel received an email from Mr. DeWitt noting his frustration that the Settlement Administrator had not provided him or Ms. DeWitt with notice of the Settlement and that the Settlement Administrator did not have their information. Scott Decl., at Ex. A. The same day, Class Counsel reached out to both the Settlement Administrator and MEF's Counsel. *Id.* Class Counsel also contacted Mr. DeWitt on September 12 to seek additional information. *Id.* at Ex. B.

Through the Parties' investigation, it was discovered that Mr. and Ms. DeWitt's memberships had been marked as paid in full in the Millennium Database. *Id.* at Ex. C; Krinsk Decl. III, at ¶ 10. "Paid-in-Full" members pay all membership dues when they become members and are not charged a monthly membership fee. *Id.* These members' monthly dues cannot be increased, as they have paid their membership dues in advance. Scott Decl., at ¶¶ 7-9. Some of these accounts, however, are converted to a "month-to-month" following the initial "Paid-in-Full" term. *Id.* This distinction in the Millennium Database initially prevented these "Paid-in-Full" Class Members (the "Omitted Class Members") from being included in the Class Data. *Id.* The Omitted Class Members represented an extreme minority of the Class, approximately 23,500 out of 1.7 million. *Id.*, at ¶ 11.

When this oversight was discovered, Class Counsel emailed Mr. DeWitt to inform them that he and his wife's claims had been accepted and explained the delay. *Id.*, at Ex. C. The Parties also stipulated to continue the Final Approval Hearing, provide notice to the Omitted Class Members, and provide these Class Members the same 60-day notice period to submit a Voucher Request, and object to or opt out of the Settlement as all other Class Members were provided. *See* Stipulation to Change Hearing Date for Final Settlement Approval [ECF No. 129]. When informed his claim had been processed, Mr. DeWitt responded to Class Counsel's email and noted: "really wish I had seen this before I left for the post office. With today being the last day to file an objection, and with Massage Envy as of 20 minutes ago calling and telling me again that neither I nor my wife were in the settlement, I would have considered not objecting to the settlement." Scott Decl., at Ex. C. Nonetheless, Mr. DeWitt's email continued to note his concerns with the notice and claims process. *Id.* Accordingly, Plaintiffs responds to the DeWitts' concerns.

- 3 -

### 2.    The Dewitts' Objections

As a result of his experience, Mr. DeWitt objects to notice and the Voucher request process. *See generally* DeWitt Objection, ECF No. 126. Specifically, Mr. DeWitt objects that there was no "evidence" provided regarding the size of the Class or the accuracy of the Class Data provided to the Settlement Administrator. *Id*, at p. 4. Mr. DeWitt further objects that the Notice was flawed for several reasons, including that (1) Class Members were not provided an address to mail a Voucher Request, (2) the notice required objections to be filed with Class Counsel, (3) the Notice did reach all Class members, and (4) that there is no method to provide effective resolution of disputes between a Class Member and the Settlement Administrator. *Id*, at pp. 1-7, 11.

Mr. DeWitt further raises objections regarding the merits of the Settlement. First, Mr. DeWitt argues that because the Settlement's maximum payout is a $50 Voucher, the Settlement unfavorably favors those Class Members with smaller claims and creates a conflict between Class Members. *Id*, at pp. 4-5. Second, Mr. DeWitt objects that the Settlement does not take into account the consumer protection laws of other states, including Missouri's Merchandising Practice Act. *Id*, at pp. 7-10. Third, Mr. DeWitt objects that the Released Claims is overboard. *Id*, at p. 12. Finally, Mr. DeWitt asserts that the Settlement is a windfall for Class Counsel. *Id*, at p. 12.

### C.    The Anand Objection

Tarush R. Anand objects to the Settlement asserting that it does not provide meaningful relief to those members of the Class who have numerous unused membership services. Declaration of Cameron R. Azari ("Azari Decl. I"), ECF No. 133, Att. 2 [Anand Objection]. A Membership entitles each member to one fifty-minute service per month. Declaration of Jeffrey R. Krinsk in Support of Motion for Preliminary Approval ("Krinsk Decl. I"), ECF No. 103-1, at ¶ 4. If a monthly membership service is not used in a specific month, it remains available provided the Class Members' Membership remains active. Mr. Anand asserts that he has over 100 accrued Membership services, and will be unable to utilize the Voucher because he already is entitled to these 100 services from the ME Locations and the Voucher will likely go unused. Azari Decl. I, Att. 2 [Anand Objection].

Additionally, Mr. Anand objects that the proposed injunctive relief does nothing to protect him and other Class Members who like him have numerous unused Membership services because, even

with 45-days advance notice of any future monthly Membership fee increase, they are unlikely to cancel their Membership out of fear of losing their Membership services. *Id.* Given the lack of perceived value for himself and similarly situated Class Members, Mr. Anand also objects to the requested Attorneys' fees and Incentive Award's as unwarranted. *Id.*

### D. The Rehwaldt Objection

Greg Rehwaldt is a Former Member, who canceled his Membership after the Membership fee increases at issue in this case. Azari Decl. I, Att. 2 [Rehwaldt Objection]. Mr. Rehwaldt asserts that he is injured to a greater extent than other Class Members because he mitigated his damages by terminating his Membership. *Id.* Accordingly, Mr. Rehwaldt believes that he, and other Class Members who canceled their Memberships, are entitled to a greater amount of the Settlement:

> For those members who continued to use the service and pay the increased rates they by their actions have accepted the rate increase. To provide more than a set amount is rewarding lack of responsibility on their part. It would be similar to allowing someone you know to steal half of your lunch at work everyday and not objecting. If it continues and you take no action, you are complicit in the other party's wrongdoing.

*Id.* Mr. Rehwaldt seeks $1,000 dollars for each Class Member who canceled their Membership, plus five to ten percent of any attorneys' fees awarded. *Id.*

Mr. Rehwaldt further objects to (1) the non-monetary nature of the Settlement, asserting the Vouchers are coupons and that the Class is entitled to monetary relief, (2) the amount of attorneys' fees are disproportionate to the amount received by Settlement Class Members under the Settlement, (3) that there is a conflict of interest between the Plaintiffs, Class Counsel, and MEF,[4] and (4) that Class Members should be entitled to object to the Settlement while excluding themselves. *Id.*[5]

### E. The Smeins Objection

Dorothy Smeins asserts that, based on the plain reading of her Membership Agreement ("Your membership dues of $59 (not including any additional applicable taxes) will be due on 9/16/10 and then due on or after the same day of each month hereafter until you [sic] membership expires or is

---

[4] The precise nature of the alleged conflict between Class Counsel and the Parties is not stated; instead it is inferred by the non-monetary nature of the Settlement. Azari Decl. I, Att. 2 [Rehwaldt Objection].

[5] As noted by the Court in its Order on Mr. Lapa's Administrative Motion, a Class Member cannot exclude himself, while objecting to the Settlement. *See* ECF No. 113.

terminated in accordance with this agreement."), she is entitled to a refund of all monthly Membership fees she paid in excess of $59. Azari Decl. I, Att. 2 [Smeins Objection]. Additionally, Ms. Smeins asserts an unexplained objection to Plaintiffs' requested incentive fees. *Id.*[6]

### F. The Smith Objection

Teresa Ann Smith objects to both the non-monetary nature of the Settlement and the amount provided. Azari Decl. I, Att. 2 [Smeins Objection]. Ms. Smith asserts that since the Class Members paid cash for their monthly dues, they are entitled to receive cash in settlement. *Id.* Additionally, Ms. Smith states that each Settlement Class Members should receive a 100% refund of all increased monthly Membership fees paid, in addition to the Settlement Vouchers. *Id.*

## III.  ARGUMENT

### A. The Notice to the Class was Proper and any Deficiencies were Raised with the Court and Corrected

#### 1. Class Notice was provided to identifiable Class Members

Notice of a pending class settlement is required to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "[T]he type of notice to which a member of a class is entitled [under Rule 23(c) ] depends upon the information available to the parties about that person." *Bruno v. Quten Research Inst.*, LLC., No. SACV 1100173, 2012 WL 12886843, at *3 (C.D. Cal. July 16, 2012). But, individual notice should be provided to the class when "names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974).

The Settlement Administrator provided Email Notice to those Class Members whose email address was available and Postcard Notice to Class Members whose email address was unavailable but for whom a physical mailing address was available. Azari Decl. I, ¶¶ 7-13. This resulted in Class Notice being directly provided to 1,647,194 Class Members, or 96.5% of the Class. *Id.*, at ¶ 13. Additionally, although not provided by the Settlement, the Parties agreed to provide reminder notices

---

[6] Ms. Smeins states that she "object[s] to the incentive award for Class Members but I am not opposed to the repayment of reasonable attorneys' fees." Azari Decl. I, Att. 2 [Smeins Objection]. In doing so, it is not entirely clear if she is objecting to the incentive award for Plaintiffs or the Settlement relief to Class Members.

to those Class Members who had not submitted a Voucher Request shortly before the deadline to do so. *Id.*, at ¶¶ 8, 11.

The Notice and Voucher Request process was handled online through the Settlement Website, but the Settlement Administrator mailed a Long Form Notice and paper Voucher Request to all Class Members who requested them. *Id.*, at ¶ 12. 1,159 Long Form Notices and Voucher Requests were mailed to Class Members as a result of such requests. *Id.*

It is true, as Mr. DeWitt's objection points out, that 23,481 Class Members were omitted from the original notice efforts. The Parties, however, corrected this oversight by providing notice to the Omitted Class Members in the same manner as the rest of the Class and giving the Omitted Class Members the same 60 day period (or until December 17, 2019) in which to submit Voucher Requests, opt-out, or object to the Settlement as all other Class Members were given. *See* Stipulation to Change Hearing Date for Final Settlement Approval [ECF No. 129].[7] This second round of notice resulted in an additional 18,106 Email Notices and 4,998 Postcard Notice being mailed. Azari Decl. I, ¶ 9. As a result of the parties agreement, Mr. and Ms. DeWitt will each receive a Voucher and many of the issues identified in Mr. DeWitt's objection were corrected. Scott Decl., Ex. C; Krinsk Decl. III, ¶ 12.

Nevertheless, Mr. DeWitt criticizes the Settlement for providing <u>*direct*</u> notice to the Class, as he believes it would likely result in low Voucher Request rates. ECF No. 126, at p. 17 ("The Court should consider that direct mail, one of the processes used to reach the class members here, has a terribly low response rate….") While Mr. DeWitt's argument that only a small percentage of Class Members will respond to email and mailed notices may have some merit, this argument conflates notice with the Class's reaction to the notice. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 329 (N.D. Cal. 2018) (noting a low claims rate is not necessarily indicative of a flawed notice). In this case, the <u>*direct*</u> mailing of Class Notice to Class Members was the best notice possible and was preferable to other commonly used notice methods, such as publication notice. The Class was, therefore, provided the best opportunity to participate, object to, or opt-out of the Settlement, if they so choose. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

---

[7] The parties provided both initially noticed and omitted Class Members the additional full sixty-day period to submit their claims. Azari Decl. II, ¶ 25.

Mr. DeWitt further argues that the Settlement does not ensure that the Class Data is accurate and complete. *See* ECF No. 126, at p. 4. The Class Data provided to the Settlement Administrator was taken directly from MEF's Millennium Database (*see* Settlement Agreement, at ¶ 14(A)) – an internal database into which each ME Location input information concerning its members. *See Hahn v. Massage Envy Franchising, LLC* ("*Hahn I*")*,* No. 12CV153, 2014 WL 5099373, at *6 (S.D. Cal. Apr. 15, 2014). Class Counsel is well aware of the functionality of this database and has used it to identify Class Members in the past. *See id.,* at p. 11 ("Defendant's Millennium computer system gathers information that makes it possible to generate a list of all California members who cancelled their membership or went into arrears, and the date each member joined and cancelled, [and] the membership fees paid… ."). This is the reason it was chosen for the Class Data in the Settlement. Krinsk Decl. I, at p. 11 n.1 ("Based on Counsel's experience in *Hahn*, Plaintiffs understand the functionality and contents of the Millennium Database and found [it an] accurate source of information."). Plaintiff is confident in the accuracy of the Class Data provided to the Settlement Administrator. *See id.*[8]

Although Mr. DeWitt's objection suggests that MEF may wish to limit its liability under the Settlement by providing inaccurate Class Data, Plaintiffs finds such a suggestion unlikely. While the relationship between the Parties has been adversarial, neither MEF or its Counsel has ever done anything to suggest that either would defraud the Court. Krinsk Decl. III, at ¶ 6. Such actions would also threaten the enforceability of the Settlement (and Release), which is not in MEF's interest. Also, given the source of the Class Data is the same information that the ME Locations use for billing purposes, the Millennium Database is reliable. *Id.*, at ¶ 3.

2. Class Notice provided Class Members with the information needed to participate in, object to or opt out of the Settlement

Mr. DeWitt challenges the content of the notice on two erroneous grounds. First, Mr. DeWitt suggests that Class Notice requires objections to be mailed to Class Counsel, who may have an antagonistic relationship with such Class Members. ECF No. 126, at pp. 5-6. This is simply incorrect. The Notice approved by the Court required that objections be provided to the Settlement

---

[8] Plaintiff is also confident in the total number of Class Members. Plaintiff is familiar with MEF's' business model, its past membership numbers, and its growth. Krinsk Decl. III, at ¶ 4.

Administrator. *See* Supplemental Proposed Notice [ECF No. 112] at pp. 11-12 (original Long Form Notice), Scott Decl., Ex. E at p. 25-26 (supplemental Long Form Notice); *see also* https://www.massage feesettlement.com/Home/FAQ. Mr. DeWitt's Objection also suggests that no information was provided to the Class regarding how to mail a Voucher Request, including the address to which to send the Request. ECF No. 126, at p. 5. Again, this is incorrect. Any Class Member who requested a paper Voucher Request was provided with one. Azari Decl. I, ¶ 12. The instructions on the paper Voucher Request included the address at which to mail the completed Request. Krinsk Decl. III, ¶ 8. Thus, it is unsurprising that 585 paper Voucher Requests were received by the Settlement Administrator. Azari Decl. I, ¶ 14.

3. Class Members had a Reasonable Method of Dispute Resolution

Mr. DeWitt strangely derides the Settlement for lacking a dispute resolution process. ECF No. 126, at p. 7. Mr. DeWitt, however, availed himself of the various dispute resolution mechanisms available, including *contacting Class Counsel or the Settlement Administrator for assistance* and *filing an objection with the Court*. In this case, the Settlement Administrator handled 16,968 calls representing 7,300 inbound calls constituting 78,811 minutes by *live* operators responding to questions and who also handled 1,565 outbound calls representing another 3,196 minutes responding to questions from Class Members. Azari Decl. I, ¶ 19. Class Counsel fielded a large number of calls from the Class as well. Krinsk Decl. III, at ¶¶ 13-14. And the Court received seven objections, including the DeWitts' objection. These dispute resolution mechanisms were not illusory.

**B. This Settlement is a Result of a Fair Compromise**

A number of the objectors assert that the Class Members are entitled to a full refund of all increased Membership fees paid, if not more. Azari Decl. I, Att. 2 [Smeins, Smith, and Rehwaldt Objections]. Similarly, other objectors suggest that the amount of the Vouchers is too low or is otherwise insufficient. *See, e.g.,* ECF Nos. 124, 126. Plaintiffs appreciate the concerns of these objectors, Plaintiffs too were concern with maximize the Settlement Class recovery. But the "proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original). "[T]he very essence of a settlement is compromise, 'a yielding of

absolutes and an abandoning of highest hopes.'" *Ibid.* Plaintiff should not be held to standard that requires recovery of all the recoverable damages at settlement.

Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Browne*, 2010 WL 9499072, at *12. Thus, "that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney*, 151 F.3d at 1242 (internal quotation marks omitted). Moreover, the fact "[t]hat certain Settlement Class Members evaluate the risks differently, or would prefer to go to trial despite those risks, does not prevent the Court from granting final approval to the Settlement." *Perkins v. Linkedin Corp.,* No. 13-CV-04303, 2016 WL 613255, at *6 (N.D. Cal. Feb. 16, 2016). The benefits provided by this Settlement are fair and reasonable when compared to the risk associated with future litigation.

The strengths and weaknesses of Plaintiffs' case and MEF's defenses are explained in Plaintiffs' Motion for Final Approval (concurrently filed herewith), Motion for Attorneys' Fees, Costs, and Incentive Award (ECF No. 119), and Preliminary Approval (ECF No. 103), and will not be repeated here. Yet, it is worth noting, that a number of procedural and substantive issues would need to be resolved before the Settlement Class could declare victory at trial – including class certification and summary judgment. In addition, appeals would likely follow any favorable judgment (and likely class certification). *See* FED. R. CIV. P. § 23(f). The Settlement was a fair result, given these risks.

While "certain Settlement Class Members evaluate the risks differently, or would prefer to go to trial despite those risks, that does not prevent the Court from granting final approval to the Settlement." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 323 (N.D. Cal. 2018). Indeed, if a Settlement Class Member felt so strongly, they did have the option to opt out of the Settlement and pursue their own relief.

**C. The Settlement Treats Class Members Equally**

1. The Settlement does not Undercut any Class Member's Claims

Mr. DeWitt further objects to the Settlement on the grounds that it undercuts his own state law claims. ECF No. 126, at p. 7-10. But, a review of the Amended Complaint's causes of action indicates

- 10 -

that application of Missouri (or any other states' law) would not have provided any additional benefit either in settlement negotiations or litigation of this case. First, Plaintiffs' claim is essentially, a breach of contract claim. *See generally* First Amended Complaint ("FAC") [Doc. 60] (asserting a national class for breach of contract); *see also* Plaintiffs' Reply in Support of Motion for Judgment on Pleadings, ECF No. 46 (This action "is primarily predicated on a breach of contract."). Consequently, the nature of Plaintiffs' dispute is not likely to change from state-to-state, as contract law is relatively uniform, making a national class settlement for breach of contract proper. *See In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (granting certification of nationwide class on breach of contract and declaratory judgment claims).

Second, the argument that Plaintiff failed to take advantage of the stronger protections under Missouri's Merchandising Practices Act is unsupported. Mr. DeWitt correctly notes that restitution under the Merchandising Practices Act is available for a broad scope of unfair and unlawful business practices without proof of scienter and reliance. ECF No. 126, at p. 7-9. But, the same is true of the California statutory claims asserted. *See, e.g., In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009) (Courts have "repeatedly and consistently [held] that relief under the UCL [and FAL] is available without individualized proof of deception, reliance and injury."); *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 181 (1999) (The UCL includes "broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's invention would contrive.'"). Indeed, "California's consumer protection laws are among the strongest in the country." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001).

Nevertheless, these statutory claims are largely duplicative of Plaintiffs' contract claims, which also do not require scienter or reliance. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (The elements of breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."); *Walker v. Presidium, Inc.*, 296 S.W.3d 687, 693 (Tex. App. 2009) (same); *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96 (2013) (same). Plaintiff did not undersell any Class Members' claims through litigating allegedly "inferior" causes of action.

Mr. DeWitt's objection argues that the "Settlement amounts that have no real tether to the amount of the overcharge to individual clients." ECF No. 126, at p. 18. Actually, the opposite is true. The amount of the Vouchers to be issued to Settlement Class Members is predicated on the amount each member paid in increased monthly Membership fees. Settlement Agreement, § IV. Given that damages accrued by a Class Member would be logically proportional to any paid fees increases, the payout mechanism in the Settlement Agreement is both rationally based and directly related to each Settlement Class Member's claimed damages. *See In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."). There is no preferential treatment of any portion of the Settlement Class.

Nevertheless, one objector argues that the Settlement unduly favors longstanding members over Class Members who cancelled their Membership. *See, e.g.,* Azari Decl. I, Att. 2 [Rehwaldt Objection]. Mr. Rehwaldt asserts that Class Members who cancelled their Membership Agreements have a stronger claim because individuals who continued their membership after the fee increase consented to the price increase. *Ibid.* This position is not supported by the law. As a general rule, silence or inaction does not constitute acceptance, especially when the offeree does not know that an offer has been made. *Velasquez-Reyes v. Samsung Elecs. Am., Inc.,* No. EDCV161953, 2017 WL 4082419, at *6 (C.D. Cal. Sept. 13, 2017). Settlement Class Members who submitted a Voucher Request deserves their *pro rata* share, even if that member failed to allegedly "mitigate" their damages.

Other objectors assert that long-term Members are disadvantaged because the Settlement's highest Voucher "tranche" extends to all Settlement Class Members who paid more than $225 in increased monthly Membership fees. *See* ECF No. 126, at p. 4. This is not a result of favoritism, however, but is more an issue of timing. The initial fee increases started in 2013 and were limited to 99 cents. Krinsk Decl. I, at ¶ 48; FAC at ¶ 10. It was only in 2016 and 2017 that the monthly membership fees increased by a greater amount. Krinsk Decl. I, at ¶ 48; FAC at ¶¶ 12, 14. Accordingly there are not a significant number of Class Members who paid fee increases above $225 to support further segmentation. *See* Krinsk Decl. I, at ¶ 64 (approximately 8% of the Class had fee

- 12 -

increases of $225.01 or more).[9]

Objectors similarly argue that Former Members are disfavored under the Settlement because they would be unlikely to return to the ME Locations or would be charged a higher rate for services than Current Members, unfairly restricting the value of the Voucher. *See, e.g.,* ECF No. 126, at p. 16; ECF No. 124, at p. 7. The first objection is not supported: Former Members have submitted 46% of the Voucher Requests. Azari Decl. II, ¶¶ 27, 29, 42 (Former Members also opted out of the Settlement at a lower rate than Current Members). This is statistically similar to the percentage of Former Members in the Class (59%). *Id.*, ¶ 15. This result is unsurprising. As noted in Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Awards, this is not a case where Class Members did not want to do business with ME Locations or argued that ME Locations's services are subpar. Rather, Plaintiffs complained that they overpaid for Memberships for which they contracted. Thus, it was reasonable to believe that Former Members would continue to use ME Location's services. *See Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 256 (E.D. Pa. 2011) ("In fact, because the class members are likely to shop at Rite Aid again, they may even prefer the $20 gift cards to the lesser value that would have been awarded had the parties opted to provide a cash award.").[10]

Concerns regarding discounts are also overstated. Class Counsel's past litigation experience has further demonstrated that non-member pricing for services is very rarely charged. *See Hahn v. Massage Envy Franchising, LLC* ("*Hahn II*"), No. 12CV153, ECF No. 196 (Plaintiffs' Opposition to Massage Envy's Motion for Decertification and to Exclude Expert Opinions of Thomas Neches). Instead, most nonmembers are charged the introductory pricing (which often is member pricing), to

---

[9] Mr. DeWitt argues that the Notice did not identify the number of Class Members in each "tranche." *See* ECF no. 126, at p. 5. This type of granularity is not required. *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). Nevertheless, such information was provided in Mr. Krinsk's Declaration in Support of the Motion for Preliminary Approval, which was posted to the settlement website. *See* Krinsk Decl. I, ¶ 64; https://www.massagefeesettlement.com/Home/Documents.

[10] Mr. Oreshack notes that "[e]ven in *Hahn*, where former members were preferentially entitled to recover 75% of their expired pre-paid massages, only 'approximately 4.6 percent' of the former members submitted claims" for support for his position that the Vouchers will not be valued by Former Members. ECF No. 124, at p. 6. Mr. Oreshack confuses the class participation rates in *Hahn* with the likelihood that Former Members would value the Vouchers here. Actually, the participation rate in the *Hahn* Settlement was well within the normal for consumer class settlements and is not indicative that those class members did not value the settlement benefits provided. *Ferrington v. McAfee, Inc.*, No. 10-cv-01455, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) ("the prevailing rule of thumb with respect to consumer class actions is 3–5 percent").

- 13 -

entice individuals to become members.  *Id.*  Based on MEF's business model, it is unlikely that Former Members would be "over charged" for services.  Nevertheless, any discounts offered are a function of Membership, not a disparity between Class Members in this Settlement.

To the extent that a Class Member's unique circumstances limit the value of the offered Vouchers, individuals could exclude themselves from the Settlement.  *Lane*, 696 F.3d at 824. Vouchers also can be sold or gifted.  Simply put, the Settlement does not favor one portion of the Class over another and certainly does not require subdivision of the Settlement Class.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) ("Potential plaintiffs are not divided into conflicting discrete categories, such as those [in *Amchem*] with present health problems and those who may develop symptoms in the future. Rather, each potential plaintiff has the same problem: an allegedly defective rear latchgate which requires repair or commensurate compensation.").

### D.     Plaintiffs and Class Counsel are Adequate Representatives

Rule 23(a)(4) requires that plaintiff "will fairly and adequately protect the interests of the class."  The adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent' and does not mandate that the interests of all class members be identical." *Louisiana Mun. Police Employees Ret. Sys. v. Dunphy*, 2008 WL 700181, at \*6 (D.N.J. Mar. 13, 2008). The adequacy factor "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 385 (C.D. Cal. 2007) (*citing Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992)).

Plaintiffs are adequate because they suffered the same alleged injury under the same circumstances as the Class (breach of contract), which confirms that the interests of all Class Members are properly aligned. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).  Plaintiffs have also vigorously represented the Class through experienced counsel.  That showing is sufficient.  *Id.*

Nonetheless, an objector asserts that Plaintiffs, and their counsel, are inadequate representatives for the Settlement Class because interests of the Former Members and Current Members are inherently in conflict. *See, e.g.*, ECF No. 124, at pp. 3-7 ("When different groups within the class have interests that significantly diverge, subclassing is required to eliminate the conflict, with

- 14 -

separate representatives and class counsel for each subclass."). Yet, for the reasons stated in the previous section, there is no disabling conflicting interests between Former Members and Current Members relative to the injury suffered. *See, supra.* Similarly, no conflict is created by the Settlement offering more compensation to those with a greater alleged injury and injunctive relief for Current Members. *See, e.g.,* ECF No. 126, at pp. 5-6; *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV161133, 2017 WL 4786093, at *8 (C.D. Cal. May 1, 2017) (the possibility that class members will recover different damages or have differing chances of ultimate success on their claims does not inform whether the class representatives possess the same interest.); *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 647 (8th Cir. 2012) (Noting "[t]hough not entirely consistent, the interests of the active and retired city employees aligned in many significant ways… Indeed, as prospective retirees, the active employees shared an interest in protecting retiree rights.").

The cases cited by the objectors do not alter this conclusion. In both *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011), and *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280 (N.D. Cal. 2017), class members who are no longer subject to the allegedly unfair and unlawful business practice lacked standing to seek injunctive relief and were inadequate for those reasons. For example, in *Ellis,* the Court found that "former" employees were no longer at risk of injury from the allegedly discriminatory promotion policies because they simply could not seek a promotion from defendant. *Ellis,* 657 F.3d at 986 (9th Cir. 2011). Similarly, in *Gold*, the proposed class representative had already had his defective flooring replaced due to a subsequent casualty, which was covered by his insurance. *Gold*, 323 F.R.D at 289-92. In this case, each of the named Plaintiffs continue to suffer the same injury as the Formers Members suffered, have the same incentive to see the practice remedied, and get the same recovery under the Settlement. Thus, the same conflict that existed in *Ellis* and *Gold* does not exist here. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) ("[T]he proposed settlement does not propose different terms for different class members; on the contrary, treatment of each class member is identical… no improper conflict of interest existed which would deny absent class members adequate representation.").

Mr. Oreshack's citation to *Hahn* is also inapposite. ECF No. 124, at p. 7. In *Hahn*, the Former and Current Members received different forms of relief: Former Members recovered 75% of accrued

- 15 -

membership massages previously forfeited upon termination of their Membership Agreements, while Current Members received injunctive relief in the form of changes to their Membership Agreements, in the form of additional time to redeem accrued membership massages upon Membership termination before such massages would be forfeited. *Hahn v. Massage Envy Franchising, LLC* ("*Hahn III*"), No. 12CV153, 2016 WL 11620608, at *6-7 (S.D. Cal. Mar. 30, 2016). This reason cause the approval of the initial settlement in *Hahn* to be denied as the recovery was different for different Class Members, creating the appearance of a conflict of interest. *Id.* This Settlement is not analogous to *Hahn* and does not involve the equivalent concerns because the relief afforded to each Class Member in this case is the same.[11]

## E. The Release Provided under the Settlement is Not Over Broad

### 1. The Scope of the Release is Not Overbroad

Mr. DeWitt stresses in his objection that the Release is over broad. ECF No. 126 [DeWitt Objection], at p. 6. The Released Claims, however, are limited to the factual allegations of the Complaint and claims that could or should have been asserted in the Lawsuit. Settlement Agreement, § I(A)(EE). This is both permissible and common. The Ninth Circuit allows courts to release not only those claims alleged in the complaint, but also claims "based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (citation omitted); *Custom LED, LLC v. eBay, Inc*., No. 12-CV-00350, 2013 WL 6114379, at *4 (N.D. Cal. Nov. 20, 2013) (approving release of claims "arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised based on the allegations of the Action"); *Chavez v. PVH Corp*., No. 13-CV-01797, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015) (indicating a willingness to release of claims "arising from, or related to the facts occurring during the Settlement Class Period as alleged").

---

[11] The differences between the *Hahn* settlement and the current settlement is also why the Court should resist the request from some objectors to use *Hahn* as the benchmark comparator to this Settlement. *See, e.g.,* ECF No. 124, at p. 7 (requests the Court to apply the redemption rate from *Hahn* to this case). Indeed, the relief provided here is greater than the relief in the *Hahn* settlement as the Vouchers provided are much more flexible then reinstatement of membership massages and, in many instances, worth more. This likely explains the greater participation rate.

## 2. The Injunctive Relief is not an Extension of the Release

Defendant has agreed to adopt as an updated template Membership Agreement that requires ME Locations to provide at least 45 days' advance written notice before any future increases in a members' monthly membership fee. Settlement Agreement § V, Ex. 5. The provisions of such Agreements would also be applied to Current Members, unless the opt out of the Settlement. *Id*., § V. The purpose of this provision is to allow each member a reasonable opportunity to cancel his or her membership agreement *before* incurring the noticed price increase. *Id*. Previously, the Membership had only required ten days notice before pricing could arguably be increased. Krinsk Decl. I, at Exs. A-C. Because thirty-days' notice was required to cancel membership, the lack of thirty-days' advance notice could lead to a catch-22 for members. *Id*.

Mr. Oreshack argues that this change in the Membership Agreement is effectively a release of future claims which were not litigated in this action. *See* ECF No. 124, at p. 19-21. But, this change in the Membership Agreement is not a release, but prophylactic injunctive relief aimed at preventing future harm. While Mr. Oreshack's characterization of the injunctive relief as a release is mistaken, even if the Court was to examine Mr. Oreshack's argument on its merits, it still fails.

The crux of this litigation was the interpretation of the Membership Agreement (*i.e.* under what circumstances, if any, could monthly fees be increased). *See generally* FAC. And the parties reached a compromise of this claim. Even the case cited by Mr. Oreshack, *Sample v. Centurylink Commc'ns LLC,* counsels that any compromise in this case requires the parties to address the continuing harm arising from the underlying dispute regarding the parties' contractual rights and obligations. In *Sample,* there was a question regarding whether cable companies had properly laid fiber-optic cable underneath railroad rights of way, which crossed privately owned land. *Sample v. Centurylink Commc'ns LLC,* No. CV-16-00624, 2018 WL 3997484, at *1 (D. Ariz. Aug. 21, 2018). Essentially, the cause of action at issue was a continuing trespass.

The *Sample* settlement clarified the dispute regarding the easements and relief for past injury. *Id.* The Court noted that if the parties settled their past claims without clarifying the parties' easement rights, the dispute would not be resolved and the parties would be back in the court:

> the structure of the settlement ... is precisely what one would expect as resolution of the claims in the complaint.... If Defendants are going to pay anything to the class

- 17 -

members, they would insist on a release, *a release that would protect them against repeated litigation over the same subject matter. And the best protection against litigation by future owners of the land is an easement that can be recorded...*

*Sample*, 2018 WL 3997484, at *10. *Sample* held "settlement of a money damage trespass class action may include perpetuation of the settled trespass *but no transfer of greater property interest*." *Id.*

This case does not involve an easement that will be bind the current, as well as future, property owners; it is just a contract dispute. But the *Sample* court's rationale applies equally to this case. Had the Settlement only provided relief for past monthly price increases, the parties would not have settled the underlying dispute—whether the Membership Agreement allows increases in monthly membership fees. The parties then would be back before the Court to litigate next month's membership fees based on the same essential disagreement. The law does not require such piecemeal litigation, and in fact discourages it.

A class release is more a species of stipulated judgment than a contract:

> The process by which a class action settlement is approved has the effect of turning the private settlement into a judicial ruling, a judgment. Thus, in class actions, future litigation is always governed by the doctrine of preclusion and never by the settlement contract directly.

Newberg on Class Actions § 18:19 (5th ed. 2014) (footnotes omitted). Accordingly, as Mr. Oreshack notes, the scope of a class release "follows naturally from basic principles of *res judicata*." ECF No. 124 at p. 20. Class settlements are, therefore, limited consistently; this is the basis of the "identical factual predicate" test:

> The scope of a judgment in a litigated class action parallels the scope of any litigated judgment: it will preclude claims arising out of the same transaction and occurrence. For settlement judgments, courts have developed a parallel test by giving preclusive effect to releases contained in settlements so long as the released conduct arises out of the "identical factual predicate" as the claims at issue in the case.

NEWBERG ON CLASS ACTIONS § 18:19 (5th ed. 2014) (footnotes omitted). Put differently, "[i]f a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either." *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18 (2d Cir. 1981).

In this case, the parties' dispute arises from a purported breach of the monthly payment terms in the Membership Agreements. *See* FAC, at ¶¶ 80-81. Accordingly, the interpretation of the Membership Agreements' monthly payment provisions and damages resulting therefrom involve the

- 18 -

same primary right and must be litigated together. *See Crowley v. Katleman*, 8 Cal.4th 666, 681 (1994)

An example can be instructive. *Mycogen Corp. v. Monsanto Co*., 28 Cal.4th 888 (2002), involved two actions regarding the breach of the same contract. *Id.*, at 894. In the original action, Mycogen sued Monsanto to secure performance on an option that allowed Mycogen to license Monsanto's gene technology at a future date. *Id.*, at 894. This original action sought declaratory relief and specific performance, but not damages. *Id.* Ultimately, the trial court granted summary judgment for Mycogen, allowing it to exercise the option. *Id.* After the judgment, however, the parties were unable to agree on the scope of the licensing agreement; Mycogen sought access to both genes and "germplasm," however, Monsanto would only agree to provide a license for the genes. *Id.* The parties brought the matter back before the trial court, who ruled for Monsanto. *Id.*

Apparently unhappy with the scope of the license, Mycogen filed a second suit to recover damages resulting from the delay in the commencement of the license agreement. *Id.*, at 894-95, 906. On appeal, Monsanto argued that Mycogen's second action was barred by *res judicata*. The California Supreme Court held that the plaintiff's "primary right" was the right to be free from all of the injuries arising from *a particular breach of contract* – *i.e.,* Monsanto's failure to honor its option contract. *Id.*, at p. 908. Thus, all damages resulting from this breach, should have been brought in the same action.

There is nothing improper from presenting the Court with a settlement that resolves the Class' claims completely and definitively.

### F.    This is Not a Coupon Settlement

A number of the objectors characterize the Vouchers as "coupons" that are fundamentally worthless. This issue was addressed in Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards, which is expressly incorporated herein and will not be reasserted here. Instead, Plaintiffs provide additional arguments and updated information to the Court.

CAFA "provides no definition of 'coupon,' so courts have been left to define that term on their own, informed by § 1712's animating purpose of preventing settlements that award excessive fees…" *In re Easysaver Rewards Litig*., 906 F.3d 747, 755 (9th Cir. 2018). In evaluating whether settlement "credits" qualify as coupons, the Ninth Circuit considers three factors: "(1) whether class members have to 'hand over more of their own money before they can take advantage of' a credit, (2) whether

the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *Id.* (*citing In re Online DVD-Rental Antitrust Litig.*, 779 F3d 934, 951-52 (9th Cir 2015)). Accordingly, the Court should examine the benefit actually being provided to the Settlement Class in this case.

The Settlement will provide Vouchers to Settlement Class Members who timely submitted a valid Voucher Request with a **$36.28, $72.38, $108.48, $144.58, or $180.68 Voucher** (depending on the quantum of fee increase paid). Azari Decl. II, at ¶ 25. Admittedly, this amount is less than original estimate provided by Class Counsel (*see* ECF No. 122, at p. 8 (estimating $50.34, $100.69, $151.03, $201.37, or $251.71 Voucher based on the then current redemption rates), but the decrease *is a result of the popularity of the Settlement*. Nonetheless, the Vouchers can be used for numerous products and services without any outlay of additional money. *See* Krinsk Decl. III, at ¶ 23.

The Vouchers are simply not a five or ten dollar "certificate or form 'to obtain a discount on merchandise or services,'" or "discount on merchandise or service." *See* ECF No. 126, at p. 16 (*citing Dardarian v. Officemax N. Am., Inc.*, No. 11-cv-00947, 2013 WL 12173924, at *2 (N.D. Cal. July 12, 2013); *Foos v. Ann, Inc.*, 2013 WL 5352969, at *2 (S.D. Cal. Sep. 24, 2013) ("The distinction between a coupon and a voucher is that a coupon is a discount on merchandise or services offered by the defendant and a voucher provides for free merchandise or services.")). Instead, the Vouchers are worth considerably more than five or ten dollars, and can be used like many other form of payment (except that the Vouchers cannot be redeemed for cash, cannot be used to pay membership fees and cannot be used for tips but any unused Voucher amounts will be available for future purchases through the Voucher's expiration date). Krinsk Decl. III, at ¶ 21. Even the lowest valued Voucher to be issued to Settlement Class Members ($36.28) can be used to purchase over two hundred products and services. *Id.*, at ¶ 21. The Vouchers will be fully transferable, can be gifted and sold, and aggregated. *In re Online DVD*, 779 F.3d at 949 (*citing Fernandez v. Victoria Secret Stores, LLC*, No. 06–4149, 2008 WL 8150856, at *6 (C.D. Cal. July 21, 2008) (approving settlement where class members were awarded a freely transferrable gift card)). Additionally, the Vouchers at issue are worth substantially more than the "coupons" involved in the cases cited by Mr. Oreshack. *Knapp v. Art.com*, 283 F. Supp. 3d 823 (N.D. Cal. 2017) (involving settlement providing class members $10 vouchers); *Seegert v.*

- 20 -

*Lamps Plus, Inc.*, 377 F. Supp. 3d 1127 (S.D. Cal. 2018) (settlement provided $18 vouchers); *In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018) (settlement provided a $20 voucher).

Mr. Oreshack further asserts that the Court should declare this a "coupon" settlement because "Massage Envy" is not a 'big box' retailer that offers a "household cash-fungible inventory." ECF No. 124, at p. 18. While ME Location's offerings are more limited than the likes of Walmart, most of the Class are Current Members and can be presumed to want goods and services offered at ME Locations. Krinsk Decl. II, ¶ 71. The Settlement relief has been nearly as popular among Former Members as it is among Current Members. Azari Decl. II, at ¶ 29, 42 (*46.45% of the Class Members who submitted Voucher Requests were Former Members, only 84 Former Members opted-out*). Indeed, Plaintiff offered evidence that these products offered by ME Locations were actually being sold. Declaration of Jeffrey Krinsk in support of Plaintiffs' Motion for Attorneys' Fees, Cost, and Incentive Award ("Krinsk Decl. II") [ECF No. 121], ¶ 69; *see, supra,* at §II(C)(2) (it does not follow the Class was dissatisfied with Massage Envy's offerings from the allegations of the Complaint). There is nothing to suggest that the Settlement Class would buy a toothbrush or toilet paper.

### G. The Settlement is not a Result of Collusion

Plaintiffs agree that any settlement that precedes class certification is rightfully subject to a higher degree of scrutiny. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-947 (9th Cir. 2011). Both Mr. Oreshack and Mr. DeWitt suggest that this case involves signs of collusion resulting from preferential attorneys' fees provisions. *See* ECF Nos. 126, at pp. 8-12; 124, at pp. 12-18. Such objections should be overruled.

First, Messrs. Oreshack and DeWitt object that Class Counsel's fees are extensive when compared to the value of the relief provided to the Settlement Class. ECF Nos. 126, at p. 15-16; 124, at p. 14-16. This is not true. Plaintiffs' requested fees represent between 25 and 33% of the approximately $10 Million in Vouchers to be provided to the Settlement Class Members who timely submitted valid Voucher Requests. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("Courts have relied on 'common fund' principles and the inherent management powers of the court to award fees to lead counsel in cases that do not actually generate a common fund."); *see also In re Bluetooth*, *supra*, at 943 ("constructive common fund"). This is in

line with the "standard" contingency fee payment in a consumer class action and is presumptively reasonable. *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *cf. City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012) ("Courts throughout the Seventh Circuit routinely consider the fee awards in other class actions and conclude that a one-third contingency fee is standard"). It is also in line with the percentage of recovery for attorneys' fee awards in the Ninth Circuit. *See, e.g., In re Bluetooth,* 654 F.3d at 947 (noting the Ninth Circuit's 25% "benchmark" for fee requests in class cases); *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 (9th Cir.1995) (attorneys' fees amounting to 33% of the common fund were justified because of the complexity of the issues and risks to class counsel).[12]

Furthermore, because this Settlement is not a "coupon" settlement, the Court should consider the total recovery by the Settlement Class – the approximately $10 Million in Vouchers - in determining the appropriate percentage of recovery for Class Counsel's fee award. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949-953; Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 14.6 (4th Ed. 2007 update) ("[i]n *Boeing Co. v. Van Gemert*, 444 U.S. 156, 100 S.Ct. 745 (1980), the Supreme Court settled this question of whether class fund fees are based on the gross settlement or net settlement funds actually claimed by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed"); *see also Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding district court abused its discretion in basing fees on class members' claims against fund rather than on a percentage of entire fund). Indeed, in this case, the Settlement Class Members who will receive Vouchers elected to receive the Vouchers; this is not a situation where the Settlement will send

---

[12] Mr. Oreshack argues that various expenses should not be included in the "denominator" for determining the percentage of the Settlement fund. *See* ECF Nos. 124, at p. 15 n.12. In general, the reasonableness of attorneys' fees "is not measured by the choice of the denominator." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir.2000); *accord Staton v. Boeing Co*., 327 F.3d 938, 974-75 (9th Cir. 2003) ("[T]he choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable.") Nevertheless, in evaluating the fee request, the Court should include attorneys' fees and costs in the value of the constructive class recovery fund. *See Staton*, at 966 (9th Cir. 2003) (constructing a hypothetical fund by adding together the amount of money Boeing would pay in damages, the amount of fees provided to various counsel, the cost of the class action notices paid for by Boeing, and a gross amount of money ascribed to all the injunctive relief contained in the agreement).

- 22 -

unsolicited coupons with the hope that they will be redeemed.

No objector has identified any evidence of collusion. In fact, the record confirms both that this case was heavily litigated and the negotiations were contentious even with the involvement of a well experienced mediator. While there is a clear sailing and reverter agreement, these elements withstand scrutiny because it is well below the attorneys' fees requested are reasonable. *Amunrud v. Sprint Commc'ns* Co. L.P., 2012 WL 443751, at *3 (D. Mont. Feb. 10, 2012) ("The 'clear sailing' provision here only provides for smooth seas up to a 17–percent benchmark. That is not an excessive fee in exchange for an unfair settlement, which a clear sailing provision can sometimes suggest.").[13] "In the case at bar, the requisite 'hard look' at the settlement indicates that the requested fees award is not "unreasonably high" in light of the significant relief obtained for the class." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d at 1007.[14]

IV. **CONCLUSION**

For these reasons stated herein, Plaintiffs respectfully requests that the Court overrule each of the objections and finally approve the Settlement.

Date: January 31, 2020                    Respectfully submitted,

                                          FINKELSTEIN & KRINSK LLP


                                          By: /s/ Jeffrey R. Krinsk

                                          Jeffrey R. Krinsk, Esq.
                                          Trenton R. Kashima, Esq.

---

[13] This issue is more fully addressed in Plaintiffs' Motion for Final Approval, concurrently filed herewith.

[14] Nor is Class Counsel's requested fees disproportionate to a lodestar crosscheck. Mr. Oreshack argues that a lodestar multiplier greater than 1.0 is inappropriate because "lodestar enhancement is only justified in 'rare and exceptional' circumstances." ECF Nos. 124, at p. 24 *citing Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010). But the case cited was decided under 28 U.S.C. § 1983, which is a "federal fee-shifting statute", and has its own "important rules" not implicated here. *Id.*, at 542 (emphasis added). Courts regularly recognize that attorneys should be awarded a multiplier for their efforts in a class action case. *See, e.g., In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1007 (N.D. Cal. 2015) (applying a lodestar multiplier of 1.7 in light of "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) ("[T]he Court believes that the 1.49 multiplier—at the low end of the Ninth Circuit's scale—is appropriate."); *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1331-32 (D. Nev. 2014) (approving multiplier of 2.0). A modest multiplier is warranted in this case.