SACKS, RICKETTS & CASE LLP
Luanne Sacks (SBN 120811)
lsacks@srclaw.com
Robert Bader (SBN 233165)
rbader@srclaw.com
177 Post Street, Suite 650
San Francisco, CA 94018
Telephone:      415-549-0580
Facsimile:      415-549-0640

Cynthia A. Ricketts (admitted *pro hac vice*)
cricketts@srclaw.com
2800 N. Central Avenue, Suite 1910
Phoenix, AZ 85004
Telephone:      602-385-3370
Facsimile:      602-385-3371

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous, Jr. (SBN 132099)
tboutrous@gibsondunn.com
Kahn A. Scolnick (SBN 228686)
kscolnick@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213-229-7656
Facsimile: 213- 229-6656

Attorneys for Defendant
Massage Envy Franchising, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAERBEL MCKINNEY-DROBNIS, JOSEPH B. PICCOLA, and CAMILLE BERLESE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MASSAGE ENVY FRANCHISING, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | CASE NO.  3:16-CV-6450-MMC (KAW)<br><br>**DEFENDANT MASSAGE ENVY FRANCHISING, LLC'S CONSOLIDATED RESPONSE TO OBJECTIONS TO PROPOSED SETTLEMENT** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. BACKGROUND AND SUMMARY OF THE OBJECTIONS ......................................... 3

    A.     Factual Background ...................................................................................... 3

    B.     Reaction to the Settlement and Objections ................................................. 4

III. ARGUMENT ..................................................................................................... 7

    A.     The Court Should Overrule Objections to the Settlement's Value .......................... 8

    B.     The Court Should Overrule the Adequacy-of-Representation Objections ............. 11

    C.     The Court Should Overrule the Objection Claiming the Settlement
           Impermissibly Releases Future Claims ..................................................... 15

    D.     The Court Should Overrule the Objection Equating the Settlement With a
           Coupon Settlement ................................................................................. 16

    E.     The Court Should Overrule the Choice of Law Objection ................................... 18

    F.     The Court Should Overrule Objections Regarding Class Notice ......................... 19

    G.     The Court Should Overrule Other Miscellaneous and Individualized
           Objections ............................................................................................. 20

IV. CONCLUSION ................................................................................................ 23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 11

*Author's Guild v. Google Inc.*, 770 F. Supp. 2d 666 (S.D.N.Y. 2011) ......................................... 15

*Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488 BRO (SHx), 2015 WL 12731932
    (C.D. Cal. May 14, 2015)................................................................................. 13, 14

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)......................................... 7, 18

*City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 CIV. 10329 RJS, 2013 WL 4399015
    (S.D.N.Y. Aug. 7, 2013) ..................................................................................... 6

*Corvello v. Wells Fargo Bank N.A.*, 2017 WL 3449072 (N.D. Cal. May 4, 2017) ................. 9, 10

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) ......................................................................... 21

*Doyle v. Chrysler Group*, 663 F. App'x 576 (9th Cir. 2016)......................................... 14

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ..................................... 14

*Garner v. State Farm Mutual Auto. Ins. Co.*, No. 08-CV-1365-CW, 2010 WL 1687832 (N.D.
    Cal. Apr. 22, 2010)........................................................................................... 8

*Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084 (9th Cir. 2011) ................................. 22

*Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280 (N.D. Cal. 2017)........................................ 14

*Hahn v. Massage Envy Franchising, LLC*, No. 12cv153 DMS (BGS), 2016 WL 11620608
    (S.D. Cal. Mar. 30, 2016)................................................................................... 13

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) ..................................... 22

*In re EasySaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018)........................................ 17

*In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019).......................... 18, 19

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ........................................ 9

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002)........................ 20

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ..................................... 17

*In re Pacific Enterprises Securities Litig.*, 47 F.3d 373 (9th Cir. 1995)........................................ 8

*In re Pet Food Products Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010)................................. 11, 13, 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liab. Litig.*, No. 10-ml-02151, 2013 WL 3224585 (N.D. Cal. June 17, 2013) ........................... 1

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ........................... 11

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ..................................................... 9

*Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ................................................................................................. 6

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .......................................... passim

*Larson v. AT&T Mobility LLC*, 687 F.3d (3d Cir. 2012) ........................................ 14

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) ..................... 6

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ................................. 18

*McKnight v. Uber Tech., Inc.*, No. 14-cv-05615-JST, 2019 WL 3804676 (N.D. Cal. Aug. 13, 2019) ................................................................................................. 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............ 7

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ................................................................................. 3

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ..................................... 13

*Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106 (9th Cir. 2018) ............. 2, 10, 21

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................ 7

*Sample v. Centurylink Commn's LLC*, No. 16-cv-00624, 2018 WL 3997484 (D. Ariz. Aug. 21, 2018) ............................................................................................. 16

*Schechter v. Crown Life Ins. Co.*, No. 13-cv-05596, 2014 WL 2094323 (C.D. Cal. May 19, 2014) ................................................................................................. 7

*Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d 1127 (S.D. Cal. 2018) ........................... 17

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................... 22

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ............................... 9

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) .............. 2

*Tennille v. W. Union Co.*, 785 F.3d 422 (10th Cir. 2015) ..................................... 11

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) ....................................... 7

*Vasquez v. USM Inc.*, No. 3:13-cv-05449-JD, 2016 WL 612906 (N.D. Cal. Feb. 16, 2016) ....... 15

*Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573 (C.D. Cal. 2011)..................................... 19

**Statutes**

28 U.S.C. § 1712(a) ................................................................................................... 17

28 U.S.C. § 1712(e) ................................................................................................... 17

Cal. Bus. & Prof. Code § 17200 ............................................................................. 19

Cal. Bus. & Prof. Code § 17203 ............................................................................. 19

Cal. Bus. & Prof. Code § 17204 ............................................................................. 19

Mo. Rev. Stat. § 407.100 .......................................................................................... 19

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... 11

Fed. R. Civ. P. 23(b)(3)(D) ...................................................................................... 11

Fed. R. Civ. P. 23(e)......................................................................................... 1, 3, 20

**Regulations**

Mo. Code Regs. Ann. tit. 15, § 60-9.020(2) ........................................................... 19

## I. INTRODUCTION

This Settlement is eminently fair, reasonable, and adequate.[1] It provides the Settlement Class with $10 million in value in Vouchers that may be redeemed for a wide variety of products and services, many of which are available without the expenditure of a penny, if that is any Class Member's preference. These substantial benefits are far more than the Class would likely receive if litigation continued. The Settlement also *resolves* the alleged wrongful practices underlying Plaintiffs' claims by requiring Defendant Massage Envy Franchising, LLC ("MEF") to adopt a new template membership agreement to be used by the independently owned and operated Massage Envy® franchises ("Franchised Locations"), under which members must receive 45 days' advance written notice before any future increase in monthly membership fees.

Tellingly, out of a Class of more than 1.7 million members, only seven (7) objected to the Settlement—just 0.0004% of the Class—and only 351 opted-out of the Settlement (just 0.02% of the Class).[2] The seven (7) objectors (the "Objectors") generally contend that *no settlement* could be adequate unless it provides a full refund of any membership fee increases Class Members paid. This unrealistic position is contrary to the law as it gives zero weight to the significant risk, expense, and delay that would result from further protracted litigation. "[I]nherent in the concept of settlement is trading a portion of a *possible* recovery for the *certainty* of some recovery. . . . Settlement is born of compromise, and settling plaintiffs trade the risk of recovering nothing for a reward that is necessarily less than their full *potential* recovery." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liab. Litig.*, No. 10-ml-02151, 2013 WL 3224585, at *14 (N.D. Cal. June 17, 2013) (italics in original).

In assessing whether a class settlement satisfies Federal Rule of Civil Procedure 23(e), arguably the "most important factor" "is the strength of plaintiff's case on the merits balanced

---

[1] All capitalized terms not defined herein have the same meaning as defined in the Stipulation of Class Action Settlement and Release ("SA") [Dkt. 103-1].

[2] There are only six (6) unique objections because Ginger and Anthony DeWitt (the "DeWitts") joined in the same objection. *See* Attachment 2 to the Supplemental Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Program ("Azari Decl.") [Dkt. 133]; Declaration of Cynthia A. Ricketts in Support of MEF's Consolidated Response to Objections to Proposed Settlement ("Ricketts Decl.,"), Ex. B.

against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (citation and internal marks omitted). Yet, none of the Objectors acknowledges the significant issues on which the Class must prevail before it could recover any amount, if litigation were to proceed. As the Court observed at the preliminary approval hearing, the "case is not an easy slam-dunk case for the plaintiffs." Ricketts Decl. ISO Response, Ex. A (Transcript of Proceedings, May 31, 2019) at 10:13-18.

The Objectors ignore numerous flaws in Plaintiffs' theory of liability—including that MEF is not a party to any membership agreement between the Class Members and the Franchised Locations, that the Franchised Locations (not MEF) decided to implement fee increases, and, regardless, the membership agreements permit fee increases. *See* Declaration of Luanne Sacks in Support of Preliminary Approval of Class Action Settlement [Dkt. 103-2] ("Sacks Decl. ISO PA"), ¶ 12. The Objectors further ignore that Plaintiffs released their claims in the settlement of a related class action (*Zizian*) three years ago. Although this Court previously disagreed with MEF on this argument, it is possible the Ninth Circuit would conclude otherwise based on subsequent authority. *See Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1110 n.3 and 1112 (9th Cir. 2018) ("the res judicata effect of a [class action] settlement [is] a bargained term of the settlement agreement" and is therefore governed by the agreement's terms).

The Objectors also ignore the difficulty of obtaining and maintaining class certification through an unmanageable trial, the necessity that any amount of individualized damages that may be awarded at trial would be offset by the value that each Class Member received from the increased membership fees paid, and the likelihood of a time-consuming and costly appeal that could result in a decision favorable to MEF. Instead, the Objectors approach this Settlement as if each Class Member is entitled to a full cash refund of any membership fee increases voluntarily paid. That is not the law, and it is not consistent with the realities of this case.

Although one Objector urges the Court to reject the Settlement because it is a purported "coupon settlement" under the Class Action Fairness Act ("CAFA"), the Settlement has none of the features of a "coupon settlement." Even if it did, coupon settlements are not *per se* improper. Instead, the Settlement easily satisfies CAFA's fairness, reasonableness, and adequacy

requirements, given the tremendous value it provides Class Members notwithstanding the many flaws in their case.

Another Objector contends the Settlement's template membership agreement impermissibly requires Class Members to release future rights. This too is incorrect. The template agreement merely clarifies existing language in the Class Members' agreements with the Franchised Locations permitting increased membership fees under certain circumstances—resolving the very issue in dispute.

Finally, several Objectors argue the Settlement is not sufficiently tailored to their individual circumstances—e.g., one Objector says he has a bank of unused accrued membership services, so he does not want the Vouchers. Yet, this again is not the law. As the Ninth Circuit has pointed out, "[i]t may be unavoidable that some class members will always be happier with a given result than others." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation and internal marks omitted). For this reason, a settlement need not satisfy every class member. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012). Indeed, a settlement is necessarily a compromise, which is "why . . . individual members [are] given an opportunity to opt out." *Id.* at 825.

As the Court found at the preliminary approval stage, the Settlement here satisfies each of the Rule 23(e) factors, and is fair, reasonable, and adequate for the Class as a whole. The Court should overrule the few objections and grant final settlement approval.

## II. BACKGROUND AND SUMMARY OF THE OBJECTIONS

### A. Factual Background

Plaintiffs and the Class Members entered membership agreements with Franchised Locations, under which, in exchange for a monthly membership fee, they receive various spa services and other benefits. Plaintiffs allege that during the class period "[the] monthly membership fees" (Dkt. 60, at ¶ 22) were increased "above the amount stated in their Membership Agreement" (*id.* at ¶ 26), and that they paid these fees because MEF's "business model ma[de] it very difficult for [them] to discontinue the membership" (*id.* at ¶ 4) by forcing members to forfeit accrued but "[unused] massages after cancellation" (*id.* at ¶ 23).

After vigorously litigating for more than three years, the Parties reached a Settlement that provides Settlement Class Members Vouchers with a total face value of $10 million. Settlement Class Members who claim the Vouchers may use them to purchase retail products, massage sessions, enhancements and/or facial sessions at any of the more than 1,200 Franchised Locations for eighteen (18) months after the Settlement's Effective Date. SA [Dkt. 103-1], ¶ 9. The Settlement also provides injunctive relief, under which MEF adopted a standard template membership agreement to be used by the Franchised Locations, which requires at least 45 days' advance written notice before future monthly membership fee increases. When the Court preliminarily approved the Settlement, it approved this template membership agreement such that the Franchised Locations are bound by it as are all Class Members who do not opt out of the Settlement. Order on Class Representatives' Motion for Preliminary Approval and Joint Motion for Vacatur ("PA Order") [Dkt. 114], ¶ 10.

## B.    Reaction to the Settlement and Objections

Class Members' reaction to the Settlement has been overwhelmingly positive. Only seven (7) of the approximately 1.7 million Class Members filed objections, and no governmental entity or official objected.[3] Azari Decl., ¶ 21, Attachment 2. Only 351 Class Members opt-out of the Settlement. *Id.*, ¶ 21.

At least five (5) of the seven (7) Class Members who filed objections entered into membership agreements with a Franchised Location that *expressly* permit monthly fee increases upon adequate notice. *See, e.g.*, Ricketts Decl. ISO Response, Exs. D-H. For instance, Objector Oreshack's membership agreement states that he has "the right to receive a notice of change in the event that any changes to the terms and conditions of [his] membership are implemented that will

[3] Notice of the proposed Settlement was provided on April 25, 2019, pursuant to CAFA. *See* Second Supplemental Declaration of Cameron Azari ("Supp. Azari Decl.") [Dkt. 135-1], ¶ 11. The Arizona, California and Texas Attorneys General (the "AGs") reviewed the preliminarily-approved Settlement and raised questions with the parties about the Settlement, including whether a Voucher can be used multiple times or must be used in one transaction, and whether the Vouchers could be used to purchase gift cards. Declaration of Mike Scott in Support of MEF's Consolidated Response to Objections to Proposed Settlement, ¶¶ 5-6. The AGs did not object to the Settlement.

vary the amount to be periodically billed to [his] account . . ." and notice of change will be sent at least ten (10) days prior to the effective date of the change. *Id.*, Ex. F (p. 2, "Terms & Conditions").

Consistent with the terms of those membership agreements, the Objectors paid between $23.76 and $430.69 in increased membership fees during the over 13-year class period. Supp. Azari Decl., ¶¶ 44-50. Even though the membership agreements expressly allowed the increased fees, the Settlement allows each Objector to claim a Voucher with a face value between $36.28 and $180.68. *Id.*, ¶ 25.

- **Objector Rehwaldt**: Mr. Rehwaldt was a member of a Franchised Location in Nevada for more than five (5) years, from January 2011 to November 2016. Supp. Azari Decl., ¶ 48. Mr. Rehwaldt paid $23.76 in increased membership fees and was entitled to claim a $36.28 Voucher, which exceeds the fee increases he paid by more than 52%. *Id.* Curiously, though, he objects that the Settlement benefits are insufficient (Azari Decl., Attachment 2 (Rehwaldt Objection) at 129-132) and did not submit a Voucher Request (Supp. Azari Decl., ¶ 48).

- **Objector Smeins**: Ms. Smeins has been a member of a Franchised Location in Maryland for more than nine (9) years, since August 2010. Supp. Azari Decl., ¶ 49. Ms. Smeins paid $292.82 in increased membership fees and was entitled to claim a $180.68 Voucher (but did not), which is 62% of the fee increases she paid. *Id.* Ms. Smeins objects that the Settlement benefits are insufficient. Azari Decl., Attachment 2 (Smeins Objection) at 16.

- **Objector Smith**: Ms. Smith has been a member of a Franchised Location in Texas for more than four (4) years, since September 2015. Azari Decl., Attachment 2 (Smith Objection); Supp. Azari Decl., ¶ 50. Ms. Smith paid $135.27 in increased membership fees and was entitled to claim a $108.48 Voucher (but did not), which is 80% of the fee increases she paid. *Id.* Ms. Smith objects that the Settlement benefits are insufficient.[4] Azari Decl., Attachment 2 (Smith Objection) at 107.

---

[4] Ms. Smith claims she paid $150 in increased membership fees but would only receive a $30 Voucher if the Settlement is approved. Azari Decl., Attachment 2 (Smith Objection). This is inaccurate, as just explained.

- **Objector Anand**: Mr. Anand has been a member of a Franchised Location in Texas for nearly eleven (11) years, since June 2009. Supp. Azari Decl., ¶ 44. Mr. Anand paid $430.69 in increased membership fees and will receive a $180.68 Voucher, if the Settlement is approved, which is 42% of the fee increases he paid. *Id.* Mr. Anand objects that the Settlement benefits are insufficient because he has approximately 100 accrued but unused membership services he chose to accumulate. Azari Decl., Attachment 2 (Anand Objection) at 59-60.

- **Objector Oreshack**: Mr. Oreshack has been a member of a Franchised Location in California, for more than eleven (11) years, since October 2008. Supp. Azari Decl., ¶ 47. He paid $395.67 in increased membership fees and, if the Settlement is approved, will receive a $180.68 Voucher, which is 46% of the fee increases he paid.[5] *Id.* Mr. Oreshack raises a number of factually inaccurate arguments. Among other things, he objects about a supposed intra-class conflict, argues that the Settlement's template membership agreement requires Class Members to release future rights, and claims that the Settlement is an impermissible "coupon settlement." Azari Decl., Attachment 2 (Oreshack Objection) at 61-92. Mr. Oreshack is represented by Theodore Frank, who has objected to class action settlements in dozens of cases. Courts have frequently rejected Mr. Frank's objections. *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *4 n. 4 (N.D. Cal. July 7, 2017) (Frank's objections to class action settlement were "similar to those rejected by other courts."); *see, e.g., City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 CIV. 10329 RJS, 2013 WL 4399015, at *5 (S.D.N.Y. Aug. 7, 2013) (Frank's client's objection "does not seem grounded in the facts of this case, but in her and her attorney's [Ted Frank] objection to class actions generally."); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) (criticizing [Frank's client's] objections as "long on ideology and short on law.").

- **Objectors Anthony DeWitt and Ginger DeWitt**: Objector Anthony DeWitt objects on behalf of himself and his wife, Ginger DeWitt. Mr. DeWitt was a member of a Franchised Location in Missouri for more than five (5) years, from June 2012 to November 2017. Supp. Azari Decl., ¶ 45. Ms. DeWitt has been a member of the same Franchised Location as Mr.

---

[5] Mr. Oreshack represents that his initial monthly membership fee was $39.99 (Azari Decl., Attachment 2 (Oreshack Objection) at 102, ¶ 3), but it was in fact $59. Ricketts Decl., Ex. F.

DeWitt for more than seven (7) years, since June 2012. *Id.*, ¶ 46. Mr. DeWitt paid $113.63 in increased membership fees and was entitled to claim a $72.38 Voucher (but did not), which is 64% of the fee increases he paid. *Id.*, ¶ 45. Ms. DeWitt paid $333.63 in increased membership fees and was entitled to claim a $180.68 Voucher (but also did not), which is 54% of the fee increases she paid. *Id.*, ¶ 46. Although the DeWitts did not submit Voucher Requests, the parties agreed to provide them Vouchers. *Id.*, ¶¶ 45-46. The DeWitts raise the same numerous miscellaneous objections to the Settlement discussed below. Azari Decl., Attachment 2 (DeWitts Objections) at 27-47.

### III. ARGUMENT

The Objectors have the burden of demonstrating the Settlement is not fair, adequate, and reasonable. *See United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) ("[O]bjectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement."). The miniscule number of objections (brought by just 0.0004% of the Class) alone militates in favor of approval. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (favorable class reaction where only 54 of 376,301 putative class members objected); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 500 opt-outs and 45 objections out of approximately 90,000 notified class members).

In the face of this strong presumption, the Objectors have not met their burden to demonstrate that the Settlement is *not* fair, adequate, and reasonable. As explained below, they have not shown, as they must, that the Settlement is so far "out of the ballpark" that it is inconsistent with the equitable objectives of approval, necessary to overcome the Court's preliminary approval. *Schechter v. Crown Life Ins. Co.*, No. 13-cv-05596, 2014 WL 2094323, at *2 (C.D. Cal. May 19, 2014); *see also* PA Order, ¶ 1; Ricketts Decl. ISO Response, Ex. A (Transcript of Proceedings, May 31, 2019) at 5-11. There is no merit to any of the objections requiring that all be overruled.

## A. The Court Should Overrule Objections to the Settlement's Value

A reviewing court "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mutual Auto. Ins. Co.*, No. 08-CV-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010); *see also In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."); *Lane*, 696 F.3d at 824 (individual class member's potential for greater recovery "does not itself render [a] settlement unfair"). This presumption arises here.

Under the Settlement, $10 million in Vouchers, on a *pro rata* basis, will be issued to Settlement Class Members, in proportion to the amount of increased membership fees that each paid, who timely claimed a Voucher:

| Fee Increase Paid | Pro-Rated Voucher Amount to be Issued |
|---|---|
| $75.00 or less | $36.28 |
| $75.01 to $125.00 | $72.38 |
| $125.01 to $175.00 | $108.48 |
| $175.01 to $225.00 | $144.58 |
| $225.01 or more | $180.68 |

Supp. Azari Decl., ¶ 25. During the more than 13-year Class Period, Settlement Class Members paid an average of $106.25 in increased membership fees and are entitled to receive a Voucher in the average amount of $94.61—which is *89%* of the increased fees each Settlement Class Member paid. *Id.*, ¶ 33. Moreover, 36,274 Settlement Class Members (or 34.32% of the Settlement Class) claiming a Voucher will receive a Voucher in an amount that is *more* than the increased membership fees they paid. *Id.*, ¶ 34.

Despite this generous relief, the Objectors' primary complaint is that the Settlement does not provide enough value, emphasizing that the Settlement does not entitle all Class Members to a 100% cash reimbursement of the increased membership fees they paid. But by its very nature, "[a]

settlement is a compromise," *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323–24 (3d Cir. 2011), and it should not be rejected "solely because it does not provide a complete victory to the plaintiffs," *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). A 100% cash reimbursement to all Class Members would have been absurd here. Indeed, even if the case proceeds to trial and Plaintiffs and the Class prevailed in all respects, any restitution relief award would be reduced by the value of the increased membership benefits each Class Member received. *See Corvello v. Wells Fargo Bank N.A.*, Nos. 10-cv-05072-VC, 11-cv-03884-VC, 2017 WL 3449072, at *3 n. 3 (N.D. Cal. May 4, 2017).

The Objectors' demand for a 100% cash reimbursement also ignores the substantial risk, expense, complexity, and likely duration of further litigation in the absence of the Settlement— including the risks of an unfavorable summary judgment ruling, obtaining and maintaining class action status throughout trial, and the time, expense and uncertainties of an inevitable appeal should Plaintiffs and the Class ultimately prevail at trial. *See In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").

If the case proceeds, there is a substantial possibility that this Court would resolve Plaintiffs' claims against them at the summary judgment stage. Plaintiffs' theory of liability is dependent upon on at least four unsupported propositions: (1) MEF, a franchisor and non-party to the Class Members' membership agreements, is liable for claims arising under those agreements; (2) the Class Members' membership agreements do not permit increases in membership fees; (3) the Class Members paid MEF the increased membership fees (which they did not); and (4) MEF, rather than the Franchised Locations, made the decision to increase the Class Members' membership fees. *See* First Amended Complaint [Dkt. 60]; Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class [Dkt. 103] ("PA Motion"), at 4, 5, 21. Indeed, as this Court recognized previously, this "case is not an easy slam-dunk case for the plaintiffs." Ricketts Decl. ISO Response, Ex. A (Transcript of Proceedings, May 31, 2019) at 10:13-18.

1      Even if Plaintiffs and the Class Members could ultimately impose liability upon MEF, the

2    type and amount of damages to which they would be entitled is hotly disputed. PA Motion, at 21.

3    And, as stated above, any restitution ultimately awarded would need to be offset by the increased

4    membership benefits received. *See Corvello*, 2017 WL 3449072, at *3 n. 3.

5      The Class would also face the risk that if this case proceeds, and Plaintiffs and the Class

6    ultimately prevail, MEF will appeal the denial of its motion for judgment on the pleadings filed at

7    the outset of the case (Dkt. 26). MEF's motion invoked the preclusive effect of the 2017 class

8    action settlement in *Zizian v. Massage Envy Franchising, LLC*, No. 16-CV-0783-DMS-BGS (S.D.

9    Cal. April 1, 2016), to argue that Plaintiffs' claims here are barred. The Court denied the motion

10   (Dkt. 49) and narrowed the preclusive effect of the parties' agreed-upon release in *Zizian* (*id*. at 5-

11   9). A year after the Court denied MEF's motion, the Ninth Circuit clarified in *Rangel*, 899 F.3d

12   1106 n.3, that under California law, the "res judicata effect of a [negotiated class] settlement tends

13   to be a bargained term of the settlement agreement." And "because a settlement agreement is

14   simply a contract [] res judicata in the settlement context tends to resemble waiver or release." *Id*.

15   (citation omitted). In light of *Rangel*, there is a substantial risk to the Class that, on appeal, the

16   Ninth Circuit would conclude that the *Zizian* settlement bars Plaintiffs' claims. The Settlement

17   appropriately reflects the risks of further litigation.

18     One Objector (Anand) asserts the Settlement is insufficient because he already has a large

19   number of accrued, unused membership services and does not want additional services. Azari

20   Decl., Attachment 2 (Anand Objection) at 59. Another Objector (Smith) claims the Settlement

21   provides no value because she is no longer a member and spa services at the Franchised Locations

22   are overpriced for non-members. *Id.* (Smith Objection) at 107. Such individualized concerns

23   provide no insight into the Settlement's overall fairness to the Class as a whole, *Lane*, 696 F.3d at

24   824, and ignore that the Vouchers can be used to purchase a vast array of retail products (not just

25   massages) at more than 1,200 Franchised Locations, can be aggregated to purchase massages,

26   facials and other personal services at any of these Franchised Locations, and are fully transferrable.

27   Declaration of Jeffrey R. Krinsk [Dkt. 121], ¶ 68, Ex. B [Dkt. 121-1].

28

While the Settlement may not account for every single Class Member's unique circumstances, "that is the nature of a settlement," *Tennille v. W. Union Co.*, 785 F.3d 422, 435-36 (10th Cir. 2015), and it is why "individual members [are] . . . given an opportunity to opt out." *Lane*, 696 F.3d at 825.  Yet, even with the right to opt-out, only 351 Class members exercised that option, confirming the Class's overall and overwhelming satisfaction with the Settlement.  The $10 million in Vouchers is a generous compromise that permits the Settlement Class to receive valuable consideration rather than risk receiving nothing if the litigation continues.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).  The objections do not establish otherwise and should be overruled.

## B.     The Court Should Overrule the Adequacy-of-Representation Objections

Certain Objectors argue the Class Representatives do not adequately represent all Class Members because of a hypothetical class conflict between (1) Current and Former Members of the Franchised Locations (*see* Azari Decl., Attachment 2 (Oreshack Objection) at 70-74), and (2) shorter-term and longer-term members (*see id.* (DeWitt Objection) at 30-31).  There is no such conflict: the Class Representatives more than adequately represent the Class for settlement purposes.[6]

Rule 23's adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent.'"  *Amchem Prods.*, 521 U.S. at 626.  "[C]lass representatives' interest must be 'coextensive' with the interest of the class; but this does not mean that the class representatives' 'positions have to be identical' with the positions of the absent class members."  *Tennille*, 785 F.3d at 430 (internal quotations omitted).  Any objection concerning adequacy of representation must "identif[y] adverse interests that would require the establishment of subclasses."  *In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 344 (3d Cir. 2010).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Tennille*, 785 F.3d at 430 (internal quotation marks omitted).

---

[6] The Class is appropriately certified for settlement purposes, notwithstanding "intractable management problems" that would preclude certification for a trial on the merits.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Fed. R. Civ. P. 23(b)(3)(D).

In support of his argument that a conflict exists between Current and Former Members of Franchised Locations, Objector Oreshack—who is a Current Member—speculates that Former Members do not benefit from the Settlement because, unlike Current Members, they do not wish to do business with any Franchised Locations and are not interested in any products or services offered at these locations.  Azari Decl., Attachment 2 (Oreshack Objection) at 73.

When granting preliminary approval of the Settlement, the Court found that "the named CLASS REPRESENTATIVES . . . are able to adequately represent the CLASS," which includes both Current and Former Members.  PA Order, ¶ 3.  Nothing has changed for the Court to now conclude otherwise.  Notably, only *two* of the Class's approximately 880,000[7] Former Members objected to the Settlement, and neither raised this concern.  Azari Decl., Attachment 2 (DeWitt and Rehwaldt Objections) at 27-47, 128-133.   Moreover, 46.45% of the Voucher Requests were submitted by Former Members, confirming that Former Members *are* interested in receiving the Settlement benefits to be used at the Franchised Locations.  Supp. Azari Decl., ¶ 29.  To the extent a Former Member does not want to do business with a Franchised Location, that hypothetical member could have opted-out of the Settlement or sell or gift the Voucher.  SA [Dkt. 103-1], ¶¶ 11, 31.  But only 70 Former Members opted-out of the Settlement (19.9% of all opt-outs), further confirming that most Former Members agree there is value under the Settlement and are interested in doing business with the Franchised Locations.  Supp. Azari Decl., ¶ 42.

Oreshack further contends that Former Members receive inadequate relief because available products and services are more expensive for non-members.  Azari Decl., Attachment 2 (Oreshack Objection) at 70-74).  This argument is misleading.  The Franchised Locations provide Current Members with discounts on certain products and services, a benefit of their membership, not of the Settlement. Declaration of Jeffrey Krinsk [Dkt. 119-2], ¶ 70.  Former Members forfeited this benefit when cancelling their membership.  In any event, there currently are more than 300 products that Current and Former Members can purchase for the *same* price at the Franchised Locations.

---

[7]  Oreshack incorrectly states that there are a "million plus" former members.  *See* Declaration of Jeffrey R. Krinsk [Dkt. 121], ¶ 71 (stating approximately 52% of 1.7 million-member Class are Former Members).

Declaration of Jeffrey R. Krinsk [Dkt. 121], ¶ 68, Ex. B [Dkt. 121-1]. Even with respect to those services that some of the Franchised Locations offer at a higher non-member price, few customers in fact pay this higher non-member price for services. *Id.*, ¶ 70. Accordingly, even if the Vouchers provide Current Members with some nominal additional buying power for a few services, no impermissible conflict between Current Members and Former Members exists under the Settlement and, regardless, Oreshack, as a Current Member, is entitled to receive this nominal additional buying power. *See Pet Food Prods. Liab. Litig.*, 629 F.3d at 346 (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("[V]aried relief among class members with differing claims in class settlements is not unusual," and it does not, without more, establish an impermissible conflict)); *see also Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488 BRO (SHx), 2015 WL 12731932, at *13 (C.D. Cal. May 14, 2015).

Oreshack next argues that an impermissible conflict between Current and Former Members must exist because several years ago, Judge Sabraw in the Southern District of California found a conflict between Current and Former Members in *Hahn* in connection with the original proposed settlement. Azari Decl., Attachment 2 (Oreshack Objection) at 72-73. The conflict of interest in *Hahn* has nothing to do with this case. In *Hahn*, the named Plaintiffs—all of whom were Former Members—sought reinstatement of accrued membership massages that they "lost" when they cancelled their memberships. *Hahn v. Massage Envy Franchising, LLC*, No. 12cv153 DMS (BGS), 2016 WL 11620608 (S.D. Cal. Mar. 30, 2016). Because the *Hahn* class members who maintained their memberships did not "lose" any massages, the proposed settlement provided Current Members with wholly different relief than the relief provided Former Members: the right to elect additional time in which to redeem accrued but unused massages upon membership cancellation. *Id.* Here, the Settlement provides Current and Former Members with *identical* relief: reimbursement for increased membership fees through Settlement Vouchers, based upon the total membership fees paid.[8] Consequently, there is no conflict between Current and Former Members

---

[8] Objector Oreshack mentions that MEF earlier argued that, because Plaintiffs' counsel (Mr. Krinsk) could not represent Current and Former Members in *Hahn*, he could not represent all such members here. Azari Decl., Attachment 2 (Oreshack Objection) at 72. But MEF's argument was

DEFENDANT MEF'S CONSOLIDATED RESPONSE TO OBJECTIONS TO PROPOSED SETTLEMENT
CASE NO. 3:16-CV-6450-MMC (KAW)

1   under the Settlement.  *See Bostick*, 2015 WL 12731932, at *13 (finding no conflict of interest
2   between class representatives and class, or between current and former Herbalife distributors, when
3   each group received the same type of relief, and approving class settlement).

4        Oreshack's other cited authorities likewise involved settlements in which different class
5   members received substantially different relief.  Azari Decl., Attachment 2 (Oreshack Objection)
6   at 71-72 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) (current employees
7   and former employees necessarily did not share interest in obtaining injunctive relief); *Gold v.*
8   *Lumber Liquidators, Inc.*, 323 F.R.D. 280 (N.D. Cal. 2017) (no shared interest between class
9   representative who sought replacement of  defective flooring and class members who already
10  replaced defective flooring); *Doyle v. Chrysler Group*, 663 F. App'x 576 (9th Cir. 2016)
11  (reimbursement for replacement parts did not adequately account for class members who had not
12  purchased replacement part and instead sought to repair defective product); and *Larson v. AT&T*
13  *Mobility LLC*, 687 F.3d 109 (3d Cir. 2012) (injunctive relief inadequate for plaintiffs who were not
14  defendant's current customers)).  As discussed above, here, Current and Former Members receive
15  *identical* relief under the Settlement.

16       In passing, another objection (filed by the DeWitts) contends that a conflict of interest exists
17  between longer-term members and shorter-term members of the Franchised Locations because
18  longer-term members purportedly suffered greater financial harm (by paying increased
19  membership fees) but receive no additional Settlement benefits.  Azari Decl., Attachment 2 (DeWitt
20  Objection) at 30-31.  This is inaccurate.  The increased fees Class Members paid are not dependent
21  on membership length because Franchised Locations increased fees in different amounts at
22  different times.  PA Motion, at 4-5.  For instance, although Objector Oreshack's membership is
23  nearly eight (8) months longer than Objector Anand's membership, Oreshack paid $35 *less* in
24  increased membership fees than Anand.  Supp. Azari Decl., ¶¶ 44, 47.  Even more importantly,
25  under the Settlement, the Voucher to which each Class Member is entitled is tied directly to the

26

27  in the context of a motion to strike class claims early in the litigation and is not relevant to whether
    there is a conflict between Current and Former Members under the Settlement.
28

increased fees actually paid, not to the length of the Class Member's membership: Class Members who paid greater increased fees are entitled to a larger Voucher.  SA [Dkt. 103-1], ¶ 9.

The Objectors have not "demonstrate[d] [any] conflicting or antagonistic interests within the class."  *See Pet Food Products Liab. Litig.*, 629 F.3d at 346.  The Court should overrule the adequacy of representation objections.

**C.    The Court Should Overrule the Objection Claiming the Settlement Impermissibly Releases Future Claims**

In the PA Order, this Court found the template agreement clarifies that "any Massage Envy Spa who uses the [template agreement may] increase the member's stated monthly membership fee following the initial membership term only by providing at least forty-five (45) days' advance written notice to the member's email address on record with the member's Massage Envy Spa and that such notice shall be effective on the date sent." PA Order, ¶ 10.  Objector Oreshack nonetheless suggests that the Settlement's Court-approved template membership agreement impermissibly requires Class Members to release future claims.  Azari Decl., Attachment 2 (Oreshack Objection) at 85.  This objection should be overruled for at least two reasons.

*First*, the Court-approved template membership agreement does not release any claims. Instead, as the Court found, it merely clarifies the Class Members' current agreements regarding the right in the future to increase monthly membership fees with adequate notice, precisely as the Court found. PA Order, ¶ 10.  The Court-approved template membership agreement is not a release. SA [Dkt. 103-1] at 132.  Courts routinely approve class action settlement agreements that include revised contractual terms, clarifying issues that the parties dispute.  *See, e.g.*, *Vasquez v. USM Inc.*, No. 3:13-cv-05449-JD, 2016 WL 612906, at *1-2 (N.D. Cal. Feb. 16, 2016) (approving class settlement requiring defendant to revise contract to reflect terms of California Labor Code).

Nor do any of Oreshack's authorities hold otherwise or suggest, much less hold, that such contractual clarifications are impermissible.  Azari Decl., Attachment 2 (Oreshack Objection) at 87-88.  Instead, Oreshack's authorities concern the extent to which a class settlement may grant a defendant rights to property not disputed in the litigation.  *Id.*  For instance, in *Author's Guild v. Google Inc.*, 770 F. Supp. 2d 666 (S.D.N.Y. 2011), the Southern District of New York denied

approval of a class settlement for several reasons, including that it required class members to grant Google certain future property rights in their creative works. Here, the Court-approved template membership agreement does not attempt to grant MEF any future rights to Plaintiffs' property. The other case upon which Oreshack relies, *Sample v. Centurylink Comm's LLC*, No. 16-cv-00624, 2018 WL 3997484 (D. Ariz. Aug. 21, 2018), is equally inapposite as it concerned the settlement of class claims against telecommunications companies that laid fiber-optic cables adjacent to class members' properties. The settlement included a release of claims for past trespass and future trespass over the same land. *Id*. at *9. It also included a release of trespass claims over additional non-litigated areas. *Id.* The District of Arizona approved the release of trespass claims with respect to the land the parties disputed, emphasizing that a class settlement properly ratifies and makes lawful conduct that was the focus of the parties' dispute. *Id*. at *10. But the court refused to approve the release of trespass claims over additional non-litigated areas, ruling that a condemnation action was a superior method of adjudication of these potential future claims. *Id*. at *12. The Court's ruling in *Sample* does not address the issue here: the procedures detailed in the template membership agreement for adjusting membership fees in the future—an issue that was the crux of the parties' dispute. SA [Dkt. 103-1], at 132.

*Second*, when the Court reviewed and approved the template membership agreement, it also found that it will bind only those Class Members who do not elect to opt-out of the Settlement. PA Order, ¶ 10. If Oreshack did not want to be bound by the new membership agreement, he was free to opt-out of the Settlement or cancel his membership (as was true for all Class Members). *See Lane*, 696 F.3d at 825. He did neither. Azari Decl., Attachment 1. His objection should be overruled for each of these separate reasons.

### D. The Court Should Overrule the Objection Equating the Settlement With a Coupon Settlement

Objector Oreshack also contends that this is a "coupon settlement," subject to increased scrutiny under CAFA. Azari Decl., Attachment 2 (Oreshack Objection) at 75-79. Oreshack's efforts to characterize the Settlement as a "coupon settlement" do not undermine the Court's prior conclusion that the Settlement satisfies each of the Rule 23(e) factors and is fair, reasonable, and

adequate for the Class as a whole.  *See* PA Order.

A classic "coupon settlement" is one in which class members receive a small discount on a future purchase from the settling defendant in place of some pecuniary loss—requiring class members "to hand over more of their own money" to receive the settlement benefit.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950-52 (9th Cir. 2015) (citation omitted).[9]  By contrast, settlements in which class members receive free vouchers or services, such as this one, are not *per se* "coupon settlements."  *See id.* (settlement providing class members $12 Walmart gift cards not a coupon settlement).  Here, Class Members do not need to spend any money to redeem Settlement Vouchers, and the Vouchers can be used to purchase hundreds of goods or services at the more than 1,300 Franchised Locations.  The Vouchers also provide Class Members tremendous flexibility—they are fully transferable, can be aggregated, have no black-out periods, and do not expire until 18 months after the Settlement's Effective Date.  *See In re EasySaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018) (in assessing whether a settlement is a "coupon settlement" courts consider: (1) "whether class members have to 'hand over more of their own money'" to take advantage of a credit; (2) "whether the credit is valid only 'for select products or services;'" and (3) "how much flexibility the credit provides.").  This Settlement has *none* of the indicia of a "coupon settlement" under CAFA.  *Id.*

But even if the Settlement is a "coupon settlement," this is not a basis to reject it.[10]  To the contrary, a "coupon settlement" must still be approved if, "after a hearing" and upon "making a written finding," the Court determines that the settlement is "fair, reasonable, and adequate for class members"; the same factors Courts consider under Rule 23(e).  28 U.S.C. § 1712(e); *McKnight v. Uber Tech., Inc.*, No. 14-cv-05615-JST, 2019 WL 3804676, at *4 (N.D. Cal. Aug. 13, 2019)

---

[9] Examples of coupon settlements that have raised concerns include: "[A] $5 to $10 voucher good for future purchases of particular computer hardware or software products, $1 off every subsequent $5 purchase at a chain of restaurants, a 30 percent discount on 'selected products' during a one-week time period, $55 to use on a purchase of a new crib from a defendant crib producer accused of making defective cribs, $1.25 off a $25 dollar [video] game."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 950 (citing S. Rep. No. 109-14, at 15-17) (internal quotations omitted).

[10]  The primary restrictions that CAFA puts on "coupon settlements" concern the calculation of attorneys' fees.  28 U.S.C. § 1712(a); *Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d 1127, 1133 (S.D. Cal. 2018).  Presumably, Plaintiffs' counsel will address that issue.

(applying a heightened level of scrutiny to "coupon settlement").  The Settlement here easily satisfies these factors—even under a heightened level of scrutiny—given that the Settlement: (1) provides substantial benefits to the Class, without the risk and uncertainty of continued litigation; (2) reflects the significant challenges Plaintiffs face to prevail, achieve class certification, and survive an appeal; (3) was the product of arm's-length negotiations after significant discovery and three years of litigation; (4) is recommended by experienced counsel; and (5) is overwhelmingly supported by Class Members.  *See Churchill Vill., L.L.C.*, 361 F.3d at 575.  Oreshack's objection should be overruled.

### E.    The Court Should Overrule the Choice of Law Objection

The DeWitts argue the Settlement should not be approved because it does not address the differences in each of the 50 states' consumer protection laws and urge that the Settlement violates the due process rights of Missouri Class Members because Missouri's Merchandising Practices Act ("MMPA") is "arguably more favorable" than California law.  *See* Azari Decl., Attachment 2 (DeWitt Objection) at 33-36.  This objection is also without merit.

Under appropriate circumstances, the Ninth Circuit has held that district courts are "free to apply the substantive law of a single state to the entire class," subject to constitutional limitations and the forum state's choice of law rules.  *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 561 (9th Cir. 2019); *but see Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (in a non-settlement context, "the district court abused its discretion in certifying a class under California law that contained class members who purchased or leased their car in different jurisdictions with materially different consumer protection laws.").  Because this action was brought in the Northern District of California, California law governs absent a showing that: "(1) the law of the foreign state 'materially differs from the law of California'; (2) a 'true conflict exists'; and (3) the foreign state's interest would be 'more impaired' than California's interest if California law were applied."  *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d at 562.  The DeWitts do not address any of these factors.

Instead, the DeWitts argue that this Court failed to *sua sponte* consider the application of Missouri law to their claims.  Azari Decl., Attachment 2 (DeWitt Objection) at 33-36.  But the

DEFENDANT MEF'S CONSOLIDATED RESPONSE TO OBJECTIONS TO PROPOSED SETTLEMENT
CASE NO. 3:16-CV-6450-MMC (KAW)

Court was not required to engage in that analysis. *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d at 562 ("neither the district court nor class counsel were obligated to address choice-of-law issues beyond those raised by the objectors"). Even if it had, the Court likely would have found that California law is consistent with or more consumer-friendly than the law of other forums. Indeed, "'California's consumer protection laws are among the strongest in the country.'" *Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 581 (C.D. Cal. 2011). There is also substantial overlap between the MMPA and California's Unfair Competition Law. Both statutes broadly prohibit unfair and unlawful practices, both statutes provide for restitution, and neither requires reliance for claims based on unfair or unlawful practices. *Compare* Mo. Rev. Stat. § 407.100 and Mo. Code Regs. Ann. tit. 15, § 60-9.020(2) *with* Cal. Bus. & Prof. Code §§ 17200, 17203, 17204.

Finally, to the extent any Class Members believed they could pursue a more favorable remedy in a different jurisdiction, they, like the DeWitts, had the opportunity to opt-out of the Settlement to do so. *See Lane*, 696 F.3d at 825. The DeWitts chose not to do so. Their choice of law objection should be overruled.

**F.      The Court Should Overrule Objections Regarding Class Notice**

The DeWitts further argue that Class Notice was inadequate because (1) the notice did not provide directions for where to mail a Voucher Request, (2) the notice allegedly provided incorrect information about submitting objections, and (3) certain Class Members did not initially receive Class Notice. *See* Azari Decl., Attachment 2 (DeWitt Objection) at 31-33. These objections are also without merit.

Contrary to the DeWitts's suggestion, the Court-approved Class Notice and Settlement Website explain clearly that Voucher Requests are to be mailed or emailed to the Settlement Administrator or submitted on the Settlement Website. Supp. Azari Decl., Attachment 4; Settlement Website at www.massagefeesettlement.com. To the extent any Class Member questioned where to submit a Voucher Request, the Class Notice and Settlement Website directed Class Members to contact the Settlement Administrator or Class Counsel. *Id.*

The DeWitts further urge that the Class Notice provided confusing instructions regarding how to object to the Settlement, because it required objections to be served on Class Counsel. There

is no suggestion that any Class Member was confused. Indeed, the DeWitts obviously had no difficulty understanding the proper objection procedure, given that they timely filed their objection, even though they claim they did not receive notice of the Settlement. Azari Decl., Attachment 2 (DeWitt Objection) at 27.

With respect to the DeWitts's objection that they did not originally receive the Class Notice, the Parties explained previously that certain "paid-in-full" members of Franchised Locations did not originally receive Class Notice because of an inadvertent error ("Omitted Members"). Stipulation to Change Hearing Date and Briefing Schedule for Final Settlement Approval [Dkt. 129]. The Court thereafter approved the Parties' agreement to provide subsequent Class Notice to these Omitted Members and the same opportunity to submit a Voucher Request and object to and opt out of the Settlement. Order Approving Stipulation [Dkt. 130]. On October 18, 2019, the Settlement Administrator provided Class Notice to the Omitted Members (including the DeWitts). Azari Decl., ¶ 9.

Class Notice was more than adequate. The DeWitts's objections should be overruled.

### G. The Court Should Overrule Other Miscellaneous and Individualized Objections

The Objectors raise various additional cursory objections, which the Court should similarly overrule.[11] *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (rejecting unsupported objections because they are "of little aid to the Court"). MEF briefly responds to these remaining cursory objections below.

***No Right to Appeal***: The DeWitts argue the Settlement contains no functional dispute resolution procedure because Class Members cannot appeal the amount of their Settlement Voucher. According to the DeWitts, this unfairly prevents Class Members from contesting the increased amounts they paid in membership fees and restricts Class Members' access to the courts.

---

[11] One Objector (Rehwaldt) challenges the opt-out and objection process because Class Members do not have the opportunity to object or opt-out of the Settlement *after* it is finally approved. Azari Decl., Attachment 2 (Rehwaldt Objection) at 132. There is nothing improper about the objection and opt-out process here. Under Federal Rule of Civil Procedure 23(e), Class Members only have the right to object or opt-out to a proposed settlement, not a finally-approved settlement.

Azari Decl., Attachment 2 (DeWitt Objection) at 36-37. The DeWitts's objection is erroneous. While the DeWitts claim Class Members could not contest the Settlement Administrator's data, the DeWitts themselves disprove that contention. The DeWitts's challenge of that data led to Class Notice being provided to the DeWitts and the other Omitted Members. Declaration of Mike Scott in Support of Stipulation to Change Hearing Date and Briefing Schedule for Final Settlement Approval, ¶¶ 7-11 [Dkt. 129-1]; Azari Decl., ¶ 9. Moreover, the DeWitts and other Class Members had the right to opt-out or object to the Settlement. The DeWitts exercised their right to object. In the event the Court overrules the DeWitts's or other Class Members' objections (as it should), then the DeWitts and other objecting Class Members may appeal that ruling. *See Devlin v. Scardelletti*, 536 U.S. 1 (2002). Neither the DeWitts nor any Class Member is denied access to the Courts.

***Release Exceeds the Benefits Conferred on the Class***: In passing, the DeWitts further argue that the Settlement's release is too broad in proportion to the relief it provides because the Settlement is based only on California law and does not consider the law of other states. Azari Decl., Attachment 2 (DeWitt Objection) at 38-39. As discussed above, the Court properly applied California law to the Settlement. *See* Section IiI.E, *supra*. The scope of the release is also reasonable—it properly releases claims that could have been asserted or are based on the same factual predicates upon which the operative complaint's claims are based. *See Rangel*, 899 F.3d at 1110–11 ("Settlements of this breadth are common and unobjectionable.").

***Size of the Class Is Unknown***: The DeWitts also argue that the Court lacks evidence regarding the size of the Class, which precludes the Court from determining if the Settlement is fair. Azari Decl., Attachment 2 (DeWitt Objection) at 29-30). This is incorrect. The preliminary approval motion disclosed that there are approximately 1.7 million Class Members. Motion for Preliminary Approval [Dkt. 103] at 14; Sacks Decl. ISO PA, ¶ 29. The Parties also disclosed that there are approximately 23,500 Omitted Members (including the DeWitts). Stipulation to Change Hearing Date and Briefing Schedule for Final Settlement Approval [Dkt. 129], ¶ 6.

***Pro Rata Distribution of Settlement Benefits***: Objector Rehwaldt challenges the *pro rata* distribution of Settlement benefits, claiming he should receive greater benefits than Class Members who did not cancel their membership, because Class Members who did not cancel their

memberships accepted the fee increases at issue. *See* Azari Decl., Attachment 2 (Rehwaldt Objection) at 131. There is no factual or legal support for this objection. As discussed above, Current and Former Members are entitled to the *same* Settlement benefits, which are determined in proportion to the increased membership fees that each member paid.

***"Clear Sailing" and "Kicker" Provisions***: Oreshack contends that MEF's "clear sailing" agreement not to oppose Class Counsel's fee request up to $3.3 million renders the Settlement unfair. *See* Azari Decl., Attachment 2 (Oreshack Objection) at 83-85. This argument is unavailing for a number of reasons.

*First*, the Court has authority to grant Class Counsel any fees it finds appropriate, and the presence of a "clear sailing" provision of the sort found here does not render a settlement agreement inherently unfair or inadequate. Indeed, "settlement agreement[s] typically include a 'clear sailing' clause." *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 553 (2009) (internal quotation marks omitted); *see also Lane*, 696 F.3d at 832. This is because a "clear sailing" provision's purpose is "to facilitate settlements and avoid[] a conflict, and yet it gives the defendant a predictable measure of exposure of total monetary liability for the judgment and fees in a case. To the extent it facilitates completion of settlements, this practice should not be discouraged." *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 553 (quotations and citation omitted).

*Second*, the Settlement contains no "kicker" agreement of the sort Oreshack describes. This is not a common-fund settlement in which one pot of money is to be divided between the Class and their Counsel. *E.g., Staton v. Boeing Co.*, 327 F.3d 938, 971 (9th Cir. 2003). In a common-fund settlement, as the amount of attorneys' fees go up, settlement relief to class members goes down; if attorneys' fees go down, relief to class members goes up. *Id.* (explaining such arrangements can lead to a "maldistribution of the total settlement package between the class and its counsel"); *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011) ("When attorneys' fees are paid out of a common fund . . . any reduction in the fee award results in an increase to the class recovery."). In a common-fund settlement, if unpaid fees are returned (or "kicked") to the defendant, the class gets less than it would have received absent the kicker.

1   Here, there is no common fund and the Settlement Class will receive $10 million in

2   Settlement benefits regardless of the amount of any attorneys' fees and costs awarded to Class

3   Counsel.  Indeed, the Settlement explicitly provides "[i]n no event will CLASS COUNSEL'S FEE

4   AND EXPENSE AWARD reduce any other benefit provided to the SETTLEMENT CLASS or the

5   CLASS REPRESENTATIVES."  SA [Dkt. 103-1], ¶ 55.  Because the Parties' fee agreement has

6   no effect on Class relief, it does not undermine the Settlement's overall fairness.

7       Each of these objections thus should be overruled.

8   **IV.    CONCLUSION**

9       For these reasons, MEF respectfully requests that the Court overrule the Objections to the

10  Settlement and enter an order granting final approval.

11  Dated: January 31, 2020                    SACKS, RICKETTS & CASE LLP

12                                             By:/s/ Cynthia A. Ricketts

13                                                Luanne Sacks
                                                  Cynthia A. Ricketts (admitted *pro hac vice*)
14                                                Robert B. Bader

15                                             GIBSON, DUNN & CRUTCHER LLP
16                                                Theodore J. Boutrous, Jr.
                                                  Kahn A. Scolnick
17
                                               Attorneys for Defendant
18                                             Massage Envy Franchising, LLC

19

20

21

22

23

24

25

26

27

28